# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MELISSA ROARK, *et al.*,

      Plaintiffs,

      v.                          C.A. No. 05-2383 (JDB)

DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

      Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiffs respectfully request that this Court enter summary judgment in their favor. The grounds for this motion appear in the accompanying memorandum of points and authorities.

      WHEREFORE, plaintiffs respectfully request that this motion be granted.

                            Respectfully submitted,

                            /s/ (filed electronically)
                            Michael J. Eig         #912733

                            /s/ (filed electronically)
                            Haylie M. Iseman #471891

                            MICHAEL J. EIG AND ASSOCIATES, P.C.
                            5454 Wisconsin Avenue, Suite 760
                            Chevy Chase, Maryland 20815
                            (301) 657-1740

                            Counsel for Melissa Roark and her parents

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MELISSA ROARK, *et al.*,

      Plaintiffs,

      v.                      C.A. No. 05-2383 (JDB)

DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS'  MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION.

Melissa Roark is a fifteen-year-old disabled child, who is entitled, under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§1400, *et seq.*,[1] to receive special education and related services from defendants, District of Columbia Public Schools ("DCPS" or "the school system").  Melissa and her parents, Robert Roark and Abigail Arnold, brought this action in response to the defendants' failure to provide her with the free appropriate public education ("FAPE") and due process of law to which she is entitled under the IDEA.

Through an administrative appeal, the parents sought the remedy of a non-public placement at The McLean School ("McLean") for the 2005-06 school year, where Melissa could receive all of her special education services in a general education setting appropriate to meet her

---

[1]    The Individuals With Disabilities Education Improvement Act of 2004 took effect on July 1, 2005, replacing the Individuals With Disabilities Education Act of 1997.  However, the federal regulations have not yet been re-promulgated, so all citations herein are to those regulations that interpret the 1997 Act.

1

needs.  This action is an appeal of a decision of a Hearing Officer,[2] who uncountably ignored the overwhelming and one-sided evidence and the weight of the law, determined that DCPS offered Melissa an appropriate special education placement, and therefore denied family their requested relief.

In so holding, the Hearing Officer committed a myriad of critical errors, including: (1) ignoring the dispositive evidence of the school system's failure to respond to Melissa's need for – and formal request for – a change in placement, though the school system's response was mandated by law; (2) improperly disregarding the uncontested and dispositive fact that McLean is a less restrictive placement than her previous school; (3) ignoring compelling expert opinion and evidence regarding Melissa's need for a program that offers full-time specialized instruction in a full-time mainstream setting; and (4) assigning the parents the burden of proving that Melissa's 2004-05 program and placement at was no longer appropriate forher for the 2005-06 school year, though law in the District placed the burden on DCPS to prove that the program would have been *was* appropriate.  The clear result of theses multiple violations of the IDEA was a denial of a free and appropriate education to Melissa Roark.

As there are no material facts in dispute and plaintiffs are entitled to judgment as a matter of law, the Roark family respectfully requests that this Court enter summary judgment in their favor, and provide them with the much-delayed relief to which they are entitled.

---

[2]     Impartial Hearing Officer Seymour DuBow decided the administrative case, in *Melissa Roark v. District of Columbia Public Schools* (November 14, 2005).  Citations to this determination will hereafter appear as "Hearing Officer's Decision at ___."

## II.    FACTUAL BACKGROUND.

Melissa Roark was born on September 23, 1990.  Complaint ¶6; Answer ¶6; R. 2[3].  She

has educational disabilities that impact her ability to succeed in school, and DCPS has therefore

found her eligible to receive special education and related services under the IDEA.  Complaint

¶7; Answer ¶7; R. 2.

For several years, and through the end of the 2004-05 school year, DCPS funded Melissa

in a placement at The Lab School of Washington ("Lab School").  Complaint ¶8;  Answer ¶8; R.

2.  Lab School is a nonpublic, full-time special education day program for students with

disabilities.  Complaint ¶9; Answer ¶9; Declaration of Karen Duncan (attached) at ¶3.  All

students at Lab School have educational disabilities, and all have Individualized Education

Programs ("IEPs"), under which they receive special education and related services.  R. 2;

Declaration of Ms. Duncan at ¶6.  The services that Melissa received at Lab School enabled her

to succeed during her time there.  Complaint ¶11; Answer ¶11.

During the 2004-05 school year, Melissa and her parents began to question whether she

required as restrictive an environment as a full-time placement, in which she had no opportunity

but to be out of the mainstream environment, away from any non-disabled peers, for all of her

schooling.  R. 45 and 48.   At an IEP meeting on March 10, 2005, Lab School convened an

educational team to discuss Melissa's progress and her needs for the 2005-06 school year, as it

does for all of its students.  R. 20; Declaration of Ms. Duncan at ¶7.  DCPS was invited to attend

this meeting.  Declaration of Ms. Duncan at ¶7.  However, in contravention of the IDEA, no

---

[3]     This citation is to the Administrative Record, which defendants filed with the Court on
April 10, 2006.  Such citations will appear herein as "R.__."

representative from DCPS attended this meeting,[4] so DCPS was not present to hear the discussion about Melissa's possible need for a change.  *Id.*

   Upon the advice of educators and experts working with Melissa, the family began to search for a less restrictive environment, for the next school year; they sought a placement in which Melissa could be educated in a more mainstream setting, but still receive a high degree of individualization and structure, in small classes with a low student:teacher ratio.  They identified McLean, a nonpublic day school in the Washington Metropolitan area, as a placement that could deliver these types of services, in this type of environment.  R. 45, 48 and 183.  Melissa was subsequently accepted by McLean for the 2005-06 school year.  *Id.*

   On June 16, 2005, the parents, through counsel, sent a letter to DCPS, advising that they believed that Melissa needed a change in placement, and that she would be appropriately placed at McLean.  Complaint ¶12; Answer ¶12; R. 48.  By this letter, they asked DCPS to place and fund Melissa at McLean for the 2005-06 school year.  The parents relinquished Melissa's space at Lab School for the 2005-06 school year, which Lab School subsequently filled with another student.  Complaint ¶12; R. 61; Declaration of Ms. Duncan at ¶8.  Lab School also advised DCPS that Melissa would not be returning, via its annual submission to the school system of a list of DCPS-funded students.  Declaration of Ms. Duncan at ¶9.

---

[4]      *See, infra*, <u>Section V.C.</u>

DCPS was required to respond to the parents' request for placement and funding at McLean, and to continue to ensure that Melissa received a FAPE.[5]  Complaint ¶14;  Answer ¶14. However, despite the parents' request, DCPS failed to hold an IEP meeting to determine whether Melissa, indeed, was ready for a change to a less restrictive placement, and, to identify a 2005-06 placement that could meet her need.  In fact, DCPS failed to respond *in any way* to the parents' request for change in placement, thereby violating the IDEA and denying Melissa a FAPE for the 2005-06 school year.  Complaint ¶15; Answer ¶15; R. 184.  With no other alternatives, at the start of the 2005-06 school year, the Roark family unilaterally enrolled Melissa at McLean.  R. 3. She has benefitted thus far from her placement there.  R. 183-84.

To appeal DCPS' denial of a FAPE to Melissa, the parents requested a due process hearing on August 2, 2005.  R. 43-46.  A hearing was scheduled for October 7, 2005.  R. 40. Prior to the hearing date, the parents, through counsel, submitted a Motion for Pre-hearing Summary Decision.  R. 175-81.  DCPS responded by submitting an Agency Briefing in which it asked the Hearing Officer to dismiss the parents' appeal.  R. 186-89, and the parents subsequently responded to the Agency Briefing.  R. 190-94.  The Hearing Officer ruled on the Motion without taking any witness testimony.  Complaint ¶18; Answer ¶18; R. 175, 186 and 191.

In his decision, dated November 14, 2005, the Hearing Officer determined that the parents were not entitled to placement and funding of Melissa at McLean.  Complaint ¶19; Answer ¶19; R. 7.  The Hearing Officer held that the parents had alleged nor demonstrated

---

[5]    The school system must ensure that FAPE is available to all students with disabilities.  34 C.F.R. § 300.300 (a)(1); *see also*, 5 D.C.M.R. § 3002.1(a) ("DCPS shall make a free appropriate public education (FAPE) available to each child with a disability, ages three to twenty-two, who resides in, or is a ward of, the District.").

5

neither that the 2005-06 IEP developed by Lab School was inappropriate, nor that Lab School was unable to implement Melissa's 2005-06 IEP.  Complaint ¶20; Answer ¶20; R.6.  And, without such a showing, the Hearing Officer held that DCPS was under no obligation to move Melissa to another school.  Complaint ¶21; Answer ¶21.

The Hearing Officer also held that the parents never asked DCPS to convene an educational planning team to discuss their concerns either about the implementation of Melissa's 2005-06 IEP at Lab School, or about her placement there.  Complaint ¶22;  Answer ¶22; R. 3.  In so finding, the Hearing Officer ignored the fact that such a request is never the parents' responsibility; rather, the *school system* always has the legal obligation *to respond* to the parents' request for a change in placement, by convening a team meeting, or otherwise.  He also ignored the critical consequence of the school system's failure to timely respond to the parents' request: that Lab School did not reserve a space for Melissa for the 2005-06 school year, once the family had advised – and the experts had agreed – that Melissa was ready for a move to a less restrictive placement.  Without an available space, Lab School was simply not an option for Melissa for the 2005-06 school year, and the Hearing Officer erred by failing to hold DCPS responsible for the effects of its inaction.  Finally, and perhaps most importantly, the Hearing Officer erred in finding that Lab School and McLean are both "private full-time special education programs for students with learning disabilities."  R. 4.  Actually, McLean is *not* a full-time special education program, hence the mainstreaming opportunity that it provided the Melissa.  The Hearing Officer simply ignored the fact that DCPS never met its legal obligation to educate Melissa in the least

restrictive environment ("LRE").[6]   All of these errors added up to an administrative decision that is simply wrong.

### III.    SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFFS IS APPROPRIATE.

In order for summary judgment to be appropriate, a party must demonstrate that there are no facts in dispute and that one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue of fact is considered to be "genuine" if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the context of the IDEA, a federal court must give "due weight to the findings of the local and state educational agencies even though it must also make an independent decision based upon a preponderance of the evidence."  *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 205-06 (1982).  The primary source of evidence in an IDEA case should come from the administrative hearing, and the administrative proceedings must not be considered a dry run for protracted litigation in federal court.  *Springer v. Fairfax County Sch. Bd.*, 134 F. 3d 659, 667 (4th Cir. 1997); *Burlington Sch. Comm. v. Department of Educ.,* 471 U.S. 359 (1985), *aff'g Town of Burlington v. Department of Educ. for the Commonwealth of Mass.*, 736 F.2d 773 (1st Cir. 1984).

Although a hearing officer's findings of fact are considered *prima facie* correct, the Court is required to make an independent decision based upon the preponderance of the evidence, giving due weight to the *regularly made* findings of fact at the administrative level.  *Doyle v.*

---

[6]        *See, infra*, <u>Section V.B</u>.

7

*Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)(emphasis supplied).  However, where findings are not regularly made, or the application of the law to the facts is erroneous, the decision does not merit deference.  *Teague Independent School Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993).

Such is the situation presently before the Court.  The evidence and arguments that the Roark family set forth clearly demonstrate that the Hearing Officer disregarded relevant, reliable evidence, and that he erroneously applied the law to the facts.  Thus, the normal deference to the Hearing Officer's findings and conclusions is not warranted.  As plaintiffs demonstrate, the Hearing Officer's legal conclusion that DCPS offered Melissa a FAPE for the 2005-06 school year is so inconsistent with the facts that those facts cannot be termed "regularly made."

## A.    The Correct Inquiry Requires a Review of the Entire Record.

The correct judicial inquiry in IDEA cases, unlike in actions based on other administrative decisions, requires deferential, but independent examination of the entire record, and then a decision rendered based on the preponderance of the evidence.  The IDEA instructs that district courts, upon hearing an action brought for review of administrative proceedings, "*shall receive the records of the administrative proceedings, shall hear additional evidence* at the request of a party, and, *basing its decision on the preponderance of the evidence*, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(e)(2) (emphasis added).  Thus, "judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard."  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993); *see also, Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997) (holding that "[t]he

standard of review under which this court considers [the student's] challenge differs from that governing the typical review of summary judgment."); *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994), *cert. denied*, 513 U.S. 839 (1994) (holding that "[t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.").  It has been well established that in IDEA cases, the Court's review is bound by no such limitations to an inclusive review.

The Supreme Court has also recognized this Court's mandate to consider more than merely the evidence now before the Court.  "Congress intended courts to make bounded, independent decisions -- bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court." *Burlington*, 736 F.2d at 791; *see also, Sanger v. Montgomery County Bd. of Educ.*, 916 F. Supp. 518 (D. Md. 1996) (holding, "The district court, however, may consider the entire record developed below as well as any additional evidence presented in the district court itself."). Instead of considering solely the facts that both parties have specifically pleaded, the Court must also make a "bounded" decision by reviewing and weighing the entire administrative record, and then make an "independent" decision based on a preponderance of the evidence.

As is clear from a review of the record here, this greater review in IDEA appeals is critical if Melissa is ever to have her rights afforded her. The Hearing Officer disregarded relevant, reliable written evidence and expert opinion, and then compounded that error by erroneously applying the law to the facts.  The evidence and testimony were clear that DCPS failed on both a procedural level and a substantive level to provide Melissa with a FAPE.  The Hearing Officer, on the other hand, ignored this uncontroverted testimony and the clear and

compelling evidence before him.  The scope of evidence in the administrative record demonstrates that the Hearing Officer issued a badly-flawed decision and that there are compelling reasons to issue judgment for the plaintiffs.

> **B.**    **The Court Must Give a Lesser Degree of Deference to IDEA Administrative Decisions Than to Other Administrative Decisions.**

In its review of the administrative record, a district court is not required to accord absolute deference to the decision of the Hearing Officer.  While the Court does afford "due weight" to the administrative decision, "the [Court must [also] independently evaluate" the facts contained in the administrative record, from both witnesses' testimony and evidence.  *Heather S.*, 125 F.3d at 1053.  Thus, it would be improper to accept as unassailable either the factual findings in the administrative decision, or the decision itself.  Rather, before determining whether factual disputes exist, a proper analysis must first consider all of the evidence.  Only then can the Court make a determination of whether the Hearing Officer erred in his decision, or departed from the normal decision-making process.  Should this Court determine that the Hearing Officer did make

findings of fact or a decision in error, the Court should not accord the decision any deference.[7]

These are, in fact the circumstances in the present case.

    The Fifth Circuit has considered the amount of deference which is due to an administrative fact finder, and has expressly rejected the argument that the administrative decision is entitled to such a strong presumption of correctness as to negate the need for additional evidence or a thorough review.  The Court held:

> Although the district court is directed by the statute to give the [ALJ's factual] findings "due weight," the statute does not state that the district court must defer to those findings when its own review of the evidence indicates that [the administrative fact finder] erroneously assessed the facts or erroneously applied the law to the facts.

*Teague*, 999 F.2d at 131 (citations omitted) (citing *Rowley*, 458 U.S. at 206); *see also, Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200 (4th Cir. 1990); *Hudson v. Wilson*, 828 F.2d 1059 (4th Cir. 1987);  *Board of Educ. of Community Consol. Sch. Dist. 21 v. Illinois State Bd. of Educ.*, 938 F.2d 712, 716 (7th Cir. 1991), *cert. denied*, 502 U.S. 1066 (1992).  This holding instructs that

---

[7]     In *Springer*, 134 F.3d 659, the Fourth Circuit clarified the standard of deference to administrative decisions first set forth in *Doyle*, 953 F.2d 100.  The *Springer* Court refused for several reasons to give deference to the administrative decision.  Where an administrative decision "turn[s] on" "the weight to be given the [parents'] evidence," the administrative decision "has no special claim to deference."  Thus, the Court held a determination of the weight to afford evidence requires an independent inquiry from that made at the administrative level.  *Id.* at 663.
        Also, the *Springer* Court noted that, where the administrative decision in *Doyle* warranted deference since it contained a detailed explanation of the result, it is appropriate to afford substantially less deference to an administrative decision which is "both cursory and conclusory." *Id.*  Plaintiffs here note that the Hearing Officer erred in applying the law to the facts about (1) Melissa's needs, (2) the family's request for a change in placement, and (3) DCPS' lack of response to this request.  Thus, without explanation, the Hearing Officer arrived at a baseless legal conclusion.  This Court therefore need only supply a rationale for a holding which departs from the administrative decision.  *Id.*

11

courts need not recognize administrative decisions as *prima facie* correct, but need only allow these decisions a degree of significance proportionate to the magnitude and relevance of the rest of the evidence.  This Court must evaluate *all* of the evidence to determine whether the Hearing Officer's factual findings are correct, and whether the Hearing Officer properly applied the law to these facts.

## IV.    THE HEARING OFFICER ERRED BY MISALLOCATING THE BURDEN OF PROOF.

Under 5 D.C.M.R. § 3022.16, "The D.C. Public Schools shall bear the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student."  This Court has historically held that DCPS bears the burden of proof in all administrative hearings, including those concerning the eligibility of a child for special education services under the IDEA.  *Kroot v. District of Columbia*, 800 F. Supp. 976, 982 (D.D.C. 1992) (explaining 5 D.C.M.R. § 3022.16).

DCPS bore the burden of proof on *all* issues before the Hearing Officer.  The precursor to *Kroot, Mills v. Board of Educ. of Washington, D.C.*, 348 F. Supp. 866 (D.D.C. 1972), precipitated the passage of the Education for All Handicapped Children Act of 1975 (now the IDEA), and found that constitutional principals of due process and equal protection necessitated the District bearing the burden of proof as to all facts concerning the appropriateness of any placement, denial of placement or transfer.  By that reasoning, DCPS also bears the burden of proving that the converse is true of the parent's unilateral placement.  Though DCPS did not meet this burden, the Hearing Officer seemed not to notice.

12

In order to meet its burden of proof in this case, DCPS would have had to disclose its documentary evidence and identify witnesses in preparation for the hearing. Under the IDEA and the District of Columbia Municipal Regulations, "At least five business days prior to the hearing, each party shall disclose to all other parties all evaluations completed by that date and recommendations based on the offering party's evaluations that the party intends to use at the hearing." 5 D.C.M.R. § 3031.2; 20 U.S.C. § 1415(f)(2)(A). The DC Municipal Regulations specify that a party to a hearing may, " Prohibit the introduction of any evidence at the hearing that has not been disclosed to all parties at least five business days before the hearing." 5 D.C.M.R. § 3031.1(c).

DCPS never disclosed any evidence at all. Thus, the Hearing Officer heard no evidence of any efforts that DCPS may have undertaken to determine whether Melissa required an alternative placement for the 2005-06 school year, or to offer her any placement at all. Without such evidence, it should have been impossible for DCPS to meet its burden, yet the Hearing Officer overlooked this dispositive point, simply ignoring defendants' failure to prove the issues before him. In conducting his analysis, he erroneously placed the burden of proof on the Roark family, requiring them to prove both that the Lab School program was no longer appropriate for Melissa, and that McLean could meet her needs.

Further, though the Roark family did not bear the burden, they nevertheless showed that they advised DCPS of Melissa's need for a change in placement, and that DCPS illegally ignored this request. The Hearing Officer offered no explanation for how DCPS could possibly have met its statutory burden. For this reason, the resulting decision was a travesty of due process.

13

## V.    THE HEARING OFFICER'S FINDINGS OF FACT AND CONCLUSIONS OF LAW WERE CONTRARY TO THE LAW AND EVIDENCE.

The presumption of correctness traditionally due to the Hearing Officer's findings is easily overcome by the facts in this administrative record, which are well-documented and were supported before the Hearing Officer by unchallenged written evidence. No reasonable trier of fact could have found as did this Hearing Officer, given the facts and the law. The Hearing Officer's complete disregard for the facts in the record establishes the basis of his erroneous denial of funding to Melissa and her family.

The Supreme Court has held that the right to a FAPE under the IDEA is comprised of two equal parts, due process of law and a substantively adequate IEP. "First, has the [educational agency] complied with the procedures set forth in the Act, and second, is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206-07. Melissa has been deprived of a FAPE under both sets of circumstances. First, the school system failed to respond to the Roark family's timely request for a change in placement, and second, the school system failed to offer an appropriate (and available) 2005-06 placement in the LRE[8] for Melissa.

Historically, federal courts have held that "failures to meet the Act's procedural requirements are adequate grounds by themselves for holding that a school board has failed to provide [the student] with a FAPE." *Board of Educ. of Cabell County v. Dienelt*, 843 F.2d 813, 815 (4th Cir. 1988) (*quoting Hall v. Vance*, 774 F.2d 629, 635 (4th Cir. 1985); *see also, Hudson*, 828 F.2d at 1063 (holding that "procedural noncompliance can itself support a finding that a

---

[8]        *See, infra*, <u>Section V.B.</u>

child has not been provided with a FAPE"); *Gerstmyer v. Howard County Pub. Sch.*, 850 F. Supp. 361, 364-5 (D. Md. 1994); *Reusch v. Fountain*, 872 F. Supp. 1421 (D. Md. 1994).

It is also true that federal courts do draw a distinction between minor procedural violations that do not affect the provision of free, appropriate educational services to the student, and violations that interfere with such a provision, or as in Melissa's case, completely thwart it. *See Gadsby v. Grasmick*, 109 F.2d 940, 956 (4th Cir. 1997). Courts have generally considered the issue of procedural violations from the prospective of the impact of the school system's failures. In *Sanger*, 916 F. Supp. 518, the district court held that, "to the extent that there may be failure to comply strictly with the IDEA's procedures, the Court must consider whether the failures have caused a loss of 'educational opportunity' or are merely technical in nature. *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990)."

Here, there can be no question as to the adverse educational impact of the school system's failures, as follows:

A.    **The Hearing Officer Erred in Failing to Recognize that the School System Violated the Family's Procedural Rights By Failing to Respond to Their Request for a Change in Placement.**

DCPS was or should have been well-aware that the Roark family was requesting a change in placement for Melissa; after all, DCPS was invited to attend the IEP meeting at which the discussion occurred (though failed in its mandate to attend), the parents formally advised DCPS of their request in June, 2005, and Lab School removed Melissa from their DCPS-submitted list of returning 2005-06 students. The law requires that DCPS had an affirmative obligation to respond to the parents' formal request; a school system is required to provide:

15

> **Written prior notice** to the parents of the child, in accordance with subsection (c)(1) of this section, whenever the local educational agency–
>> (A) proposes to initiate or change;  or
>> (B) **refuses to initiate or change**,
>
> **the** identification, evaluation, or **educational placement of the child**, or the provision of a free appropriate public education to the child.

20 U.S.C. § 1415 (b)(3) (emphasis added).  Further explaining this notice provision, 20 U.S.C. § 1415(c)(1) requires:

> The notice required by subsection (b)(3) of this section shall include–
> **(A)** a **description of the action** proposed or **refused** by the agency;
> **(B) an explanation of why the agency** proposes or **refuses to take the action** and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
> **(C)** a statement that the parents of a child with a disability have protection under the procedural safeguards of this subchapter and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
> **(D)** sources for parents to contact to obtain assistance in understanding the provisions of this subchapter;
> **(E)** a description of other options considered by the IEP Team and the reason why those options were rejected;  and
> **(F)** a description of the factors that are relevant to the agency's proposal or refusal.

(emphasis added).  Pursuant to these provisions, DCPS had an absolute mandate to provide the Roark family with formal and timely notice of its refusal to support Melissa's placement at McLean, or to otherwise provide her with IDEA services in an alternative placement.  Had defendants wished to refuse Melissa the requested change in placement, for whatever reason, the law required this minimal response from DCPS, explaining its refusal and basis therefor.  And, had defendants complied with the law, the Roark family would have known well before the 2005-06 school year started that they may need to undertake other action to either reserve (rather than relinquish) Melissa's space at Lab School for the 2005-06 school year, or to further endeavor to convince DCPS to change Melissa's placement.   However, DCPS took no steps to

16

comply with the law.  In failing in its obligation to respond, DCPS denied the family this opportunity, and thus, denied them due process of law.

Courts have recently considered the issue of a school system's notice requirements under the IDEA.  The Court in *C.M. v. Board of Education of Henderson County*, 241 F.3d 374, note 10 (4th Cir. 2001), held that, "A school system's obligation to provide adequate notice is hardly burdensome."  Even more consequentially, in *Jaynes v. Newport News Sch. Bd.*, 13 Fed.Appx. 166, 172, 2001 WL 788643, 4 (4th Cir. 2001), the Court equated such failure with a denial of FAPE:

> Because we agree with the district court's finding that [the school system] repeatedly failed to notify the Parents of their right to a due process hearing, we affirm its holding that these procedural violations constituted failure of [the school system] to provide [this student] with a free appropriate public education.

*Id.*

The *C.M.* appeal, which consolidated the cases of several special education students, considered whether it is appropriate to penalize parents for failing to follow legal obligations when they never receive written notice of their rights, to which they are entitled under the IDEA and corresponding state law:

> In [plaintiffs'] cases, the ALJs determined that [the] facts demonstrated that the school authorities provided the parents with the requisite notice pursuant to [the State statute codifying the procedural notice provisions of the IDEA]. . . .  [W]e believe that the ALJs misapplied the law to the facts; the school authorities did not provide the statutorily required notice.  Although [the statute] does not require notice in a specific form, it does . . . mandate that parents be provided express written notice . . . . [Therefore], "the . . . statute – by its terms – cannot be applied to parents without notice." . . .  In neither [of plaintiffs' cases] did the school system "affirmatively provide" the parents with the required notice, and so "by its terms" [the statute] "cannot be applied to [the] parents."

17

*C.M.*, 241 F.3d at 385.  This analysis is particularly relevant to the instant case, and together, the two serve as consummate examples of why school systems are mandated to provide detailed written notice to the parents.

There is no question that the Roark family formally requested that DCPS support a change in placement for Melissa, and specifically, that DCPS support Melissa's placement at McLean.  DCPS simply never responded to the parents' request.  In the absence of formal notice, the parents were denied the opportunity to understand and exercise their right to appeal, or to take other action.  Again, had DCPS provided the timely and requisite notice that it was refusing to offer Melissa a change in placement because Lab School was still appropriate to meet her needs, the parents could have either reserved Melissa's space at Lab School (rather than relinquishing it), or presented DCPS with additional expert opinion that the change in placement was necessary, so that DCPS could revisit its decision.  By failing in its obligation to give proper notice, DCPS denied this family the opportunity, and thus not only denied them due process of law, but also, as the *Jaynes* Court plainly held, failed to provide Melissa with the FAPE that was her right.

**B.    The Hearing Officer Erred in Finding that the School System Proposed an Appropriate Placement for Melissa, Ignoring the IDEA's Mandate to Consider the "Least Restrictive Environment."**

The IDEA requires that children with disabilities be educated "to the maximum extent appropriate" with children without disabilities.  This requirement of the IDEA, also known as the least restrictive environment, or "LRE," requirement, reveals a strong Congressional preference for mainstreaming.  20 U.S.C. § 1412(a)(5); 20 U.S.C. § 1412(a)(2).  The Fourth Circuit has stated that "mainstreaming of handicapped children into regular school programs where they

18

might have opportunities to study and to socialize with nonhandicapped children is not only a laudable goal but is also a requirement of the Act." *Devries by DeBlaay v. Fairfax County Sch. Bd.,* 882 F.2d 876, 878 (4th Cir. 1989).  While this strong preference does exist, the IDEA also recognizes that some students are in need of separate classes or more restrictive settings to gain educational benefit.  20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.550.  The key is to place the student in the LRE where he/she will receive educational benefit.

Melissa's parents advised DCPS that their daughter was ready for a change to a small, general education school setting with an individualized curriculum that can support her needs while still challenging her academically, and enabling her the opportunity for mainstreaming with nondisabled peers.  The only such placement that was ever identified for Melissa is McLean, a small mainstream nonpublic school in Maryland, that offers a college preparatory setting, with classrooms of students both with and without disabilities.  While McLean does not offer a traditional special education program, the school has been offering Melissa a number of accommodations, as well as a specialized and individualized education, to meet her needs. Melissa is part of a regular classroom, in which she has the opportunity to learn and socialize in a mainstream environment with typical peers.  McLean's small class sizes, specialized instruction, and available accommodations make it a highly appropriate fit for Melissa.  *See* R. 183-85.

In contrast, DCPS did not make any placement proposal for Melissa for the 2005-06 school year.  It simply rested on the unsupported allegation that Lab School could have continued to meet Melissa's needs, without ever evaluating or investigating whether her needs had changed, or even assessing whether there was still a space for Melissa at Lab School.  Somehow, the

19

Hearing Officer ignored these truths,[9] and determined that Lab School was an appropriate 2005-06 placement for Melissa.

Under the clear requirements set forth in the IDEA, Melissa must attend the school that offers her an education in the LRE possible, while still providing her with educational benefit. There can be no question that the specialized education and small class size at McLean makes it equipped to fulfill these requirements. The school system's allegedly "proposed" program at Lab School could not provide her the same – or any – opportunity for mainstreaming. Thus, under the LRE requirements of the IDEA, since Melissa is able to benefit from mainstreaming, and since DCPS did not offer her any placement (though the Hearing Officer erroneously considered that DCPS had offered a continued placement at Lab School), she must be provided this opportunity to be educated in the less restrictive environment at McLean. The Hearing Officer was overtly wrong to find otherwise.

**C.    The Hearing Officer Excused DCPS' Failure to Monitor Melissa's Needs, and Consequent Failure to Recognize Her Need for a Change in Placement.**

While DCPS unquestionably has instituted formal procedures for identifying students with disabilities, and ensuring that they are offered a FAPE, such is not the full extent of the school system's obligation: DCPS must monitor each student's program and progress, and must issue a new proposal for the provision of special education services at least annually, or more frequently, should the student so require. 20 U.S.C. § 1414(d)(4)(A); 34 C.F.R. § 300.343(c); 5

---

[9]    Note that the Hearing Officer made the erroneous conclusion that Lab School and McLean are both "private full-time special education programs for students with learning disabilities." R. 4.

D.C.M.R. § 3002.3(e).[10]  Thus, DCPS must *continuously* monitor those students it supports in

non-public placements, to ensure that they are receiving a FAPE, delivered through an IEP.

      The federal statute and regulations draw no distinction between the obligations borne by

an educational agency funding a student in a nonpublic school, as compared to those toward a

student in public school; the educational agency has the same duty to monitor the progress and

needs of the non-public school student, to ensure that he or she receives the same FAPE that he

or she would receive in a public school:

> Each SEA shall ensure that a child with a disability who is placed in or referred to
> a private school or facility by a public agency–
>     (a) Is provided special education and related services--
>         (1)     In conformance with an IEP that meets the requirements of
>                §§ 300.340- 300.350;  and
>         (2) At no cost to the parents;
>     (b) Is provided an education that meets the standards that apply to
> education provided by the SEA and LEAs (including the requirements of
> this part);  and
>     (c) Has all of the rights of a child with a disability who is served by a
> public agency.

34 C.F.R. § 300.401; *see also,* 5 D.C.M.R. §3002.1(d).  As a part of this mandated duty to

monitor, 34 C.F.R. § 300.402(a) requires that the funding educational agency shall "Monitor

compliance through procedures such as written reports, on-site visits, and parent questionnaires .

. . ."  *See also*, 20 U.S.C. § 1412(a)(10)(B).

      Thus, there can be no excuse for DCPS failing to be aware that Melissa required a change

in placement, or pleading ignorance of her changed needs.  The law requires DCPS to have the

same knowledge of this publicly-funded Lab School student as it would of any of its students.

---

[10]     DCPS is required to "ensure that the IEP team reviews and revises, as appropriate, but no
less than annually, the IEP of each child with a disability."

**D.     When a Student Has Been Denied FAPE, the Funding of a "Proper" Parental Placement Is the Appropriate Relief.**

Under established Supreme Court law, the school system's failure to provide Melissa a FAPE leads directly to the determination of whether her parents have identified a placement that provided her with educational benefit.  The proper analysis in such an inquiry is found in *Burlington,* 471 U.S. 359 and *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993), *aff'g* 950 F.2d 156 (4th Cir. 1991).

In *Burlington*, the Supreme Court explained that "parents who disagree with the proposed [educational program] are faced with a choice: go along with the [proposed program] to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement."  471 U.S. at 370.  To avoid compromising a child's right to a FAPE, the Court concluded that if  "a court determined that a private placement desired by the parents was *proper* under the Act and that [a proposed] placement in a public school was inappropriate," the IDEA authorizes "retroactive reimbursement to parents."  *Id.* (emphasis added).  This result is necessary because "[t]he Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives."  *Id.*

In *Carter*, the Supreme Court reaffirmed its ruling in *Burlington* and explained that "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice."  510 U.S. at 13.  Here, however, since DCPS failed to proposed an appropriate – or any – program for

22

Melissa and denied this family their due process rights, the inquiry must turn to whether her

placement at McLean was "proper."

### E.    McLean is a Proper Placement for Melissa.

After being denied any opportunity to discuss Melissa's need for a change in placement

with DCPS, the Roark family secured Melissa's enrollment at McLean for the 2005-06 school

year.  As the Court held in *Gerstmyer,* 850 F. Supp. 365, by securing an appropriate placement

for their daughter, these parents merely acted as would "any reasonably prudent family who

could afford to do so . . . ."  They stepped in for the school system, since it failed to offer any

alternative placement as required under 34 C.F.R. §§ 300.1 and 300.552.

The evidence demonstrates that Melissa's placement at McLean meets the standard of

"properness." *See, e.g.*, R. 182-85.[11]  Her parents placed her at McLean on the recommendation

of the educational professionals working directly with her, including those at Lab School.

Melissa is appropriately placed at McLean and is benefitting from such placement.  *Id.*  DCPS

did not offer the Hearing Officer any evidence whatsoever to refute these views, as would have

been necessary to meet its burden of proof under 5 D.C.M.R. §3030.3.  Since there has not been

---

[11]    It should be noted at the time of this submission, Melissa has nearly completed her first year at McLean and is doing very well.  The IDEA permits this Court to consider information regarding Melissa's current progress at McLean, as additional evidence to supplement the administrative record.  *See* 20 U.S.C. § 1415(e)(2).  The reasons for supplementation vary, but include, ". . . evidence concerning the relevant events occurring subsequent to the administrative hearing." *Justin G. v. Bd. of Educ. of Montgomery County*, 148 F. Supp.2d 576, 585 (D. Md. 2001) (citing *Burlington*, 736 F.2d at 790); *see also Ash v. Lake Oswego Sch. Dist. No. 7J*, 766 F. Supp. 852 (D. Or. 1991).  Melissa's parents placed her at McLean at the start of the 2005-06 school year, *after the administrative case.*  Thus, information regarding her progress at McLean was therefore not available at the time of the Hearing Officer's Decision.  Under the standards set forth for additional evidence, this Court is free to hear evidence of Melissa's progress that further indicates that McLean is a proper placement for her.

and cannot be any dispute that Melissa's placement at McLean is proper, under *Burlington* and *Carter* funding for that placement naturally follows. The appropriate remedy therefore should have been to order DCPS to place and fund Melissa at McLean, retroactive to the beginning of the 2005-06 school year.

## VI.    CONCLUSION.

Since the Hearing Officer failed to order the appropriate remedy for defendants' violations of the IDEA, this Court should correct the administrative error and order DCPS to place and fund Melissa at McLean for the 2005-06 school year, as her current educational placement. Because there are no material facts in dispute and because plaintiffs are entitled to judgment as a matter of law, we respectfully request that this Court enter summary judgment against defendants, that the Hearing Officer's order be reversed, and that defendants be ordered to reimburse plaintiffs for the expenses incurred in enrolling Melissa at McLean School for the 2005-06 school year, with costs and attorneys' fees.

Respectfully submitted,

/s/ (filed electronically)
Michael J. Eig          #912733

/s/ (filed electronically)
Haylie M. Iseman       #471891

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Melissa Roark and her parents

24

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MELISSA ROARK, *et al.*,

      Plaintiffs,

      v.                           C.A. No. 05-2383 (JDB)

DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

**ORDER**

      Upon consideration of the plaintiffs' motion for summary judgment, along with the related pleadings and any opposition thereto, it is the finding of the Court that the facts are not in dispute, that the plaintiffs are entitled to judgment as a matter of law, and it is by the Court, this _____ day of _____, 2006, hereby

      ORDERED, that plaintiffs' motion for summary judgment be and the same is hereby GRANTED; and it is

      FURTHER ORDERED, that the administrative decision is reversed, and it is

      FURTHER ORDERED, that defendants are to reimburse the plaintiffs for the costs incurred in enrolling Melissa Roark at The McLean School, retroactive to the start of the 2005-06 school year, with attorneys' fees and costs.

                                             _____
                                             United States District Judge