## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| | : | |
| **MELISSA ROARK, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **Civ. Action No. 05-2383 (JDB)** |
| | : | |
| **DISTRICT OF COLUMBIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

_____

### DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT
### AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants, through counsel, respectfully move this Court to grant summary judgment in their favor in the above-captioned case. As established by the administrative record, the accompanying supporting memorandum, and the statement of material facts as to which there is no genuine dispute, the challenged administrative determinations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 et seq., were entirely appropriate.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District
of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich_____*
EDWARD P. TAPTICH (012914)
Chief, Equity Section 2

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6651

**June 22, 2006**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          :
MELISSA ROARK, et al.,                    :
                                          :
        Plaintiffs                        :
                                          :
        v.                                :    Civ. Action No. 05-2383 (JDB)
                                          :
DISTRICT OF COLUMBIA, et al.,             :
                                          :
        Defendants.                       :
_____:

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

1. The student is 15 years old. *Complaint, para. 6.*

2. The student attended the Lab School of Washington ("Lab School") during the 2003-2004 and 2004-2005 school years, funded by the District of Columbia Public Schools ("DCPS"). *Complaint, para. 8.*

3. The student's May 20, 2003 Individualized Education Plan ("IEP"), developed for the 2003-2004 school year, required the student to receive 30.5 hours of specialized instruction per week, weekly individual and group sessions with a speech language therapist, weekly individual and group sessions with a clinical psychologist, and weekly individual and group sessions with an occupational therapist. *Administrative Record ("AR") filed herein April 10, 2006, p. 142.*

4. The student's May 20, 2003 IEP concluded that the student's "pervasive learning disabilities impede acquisition of academic skills and the ability to learn and complete assignments in the general education curriculum. A self-contained, intensive,

individualized, remedial special education program will allow academic and social/emotional growth." *AR, p. 167.*

5. The student's May 20, 2003 IEP recommended that she continue schooling out of a general education classroom, with special educators and related service providers between 61% and 100% of service time. *AR, p. 168.*

6. The student's May 26, 2004 IEP, developed for the 2004-2005 school year, required the student to receive 32 hours of specialized instruction per week, weekly individual speech and language therapy, weekly individual occupational therapy, and weekly individual and group sessions with a clinical psychologist. *AR, p. 110.*

7. The student's May 26, 2004 IEP concluded that the student's "pervasive learning disabilities impede acquisition of academic skills and the ability to learn and complete assignments in the general education curriculum. A self-contained, intensive, individualized, remedial special education program will allow academic and social/emotional growth." *AR, p. 135.*

8. The student's May 26, 2004 IEP recommended that she continue schooling out of a general education classroom, with special educators and related service providers between 61% and 100% of service time. *AR, p. 136.*

9. The student's March 10, 2005 IEP, developed for the 2005-2006 school year, required the student to receive 33.5 hours of specialized instruction per week, weekly individual speech and language therapy, and weekly individual sessions with a clinical psychologist. *AR, p. 82.*

10. The student's March 10, 2005 IEP concluded that the student's "pervasive learning disabilities impede acquisition of academic skills and the ability to learn and complete

assignments in the general education curriculum.  A self-contained, intensive, individualized, remedial special education program will allow academic and social/emotional growth." *AR, p. 103.*

11. The student's March 10, 2005 IEP recommended that she continue schooling out of a general education classroom, with special educators and related service providers between 61% and 100% of service time. *AR, p. 104.*

12. Similar to the 2003 and 2004 IEPs, the 2005 IEP contained numerous goals and objectives for the student to achieve in the areas of language arts, math, social behavior, speech and language, and psychological. *AR, pp. 93 – 99.*

13. The student received all As and Bs on her final report card at the Lab School for the 2004-2005 school year, earning a 3.8 grade point average. *AR, p. 59.*

14. The student thrived at the Lab School and received glowing reports from all of her teachers in her 2005 final report. *AR, pp. 60 – 69.*

15. On June 16, 2005, Plaintiffs faxed a letter to Sharon Woodson, Placement Liaison from the Office of Special Education, DCPS, informing her that the parents had unilaterally removed the student from the Lab School and placed her at the McLean School.  Plaintiffs requested "that DCPS place and fund [the student] at McLean for the upcoming school year." *AR, p. 48.*

16. There was no allegation in the letter that the student's IEP was inappropriate or that the Lab School was unable to implement the student's IEP.  There was no allegation of a denial of a free appropriate public education ("FAPE") in the letter. *AR, p. 48.*

17. On August 2, 2005, Plaintiffs submitted a request for an administrative due process hearing alleging a procedural and substantive violation of the individuals with

disabilities education act ("IDEA").  Plaintiffs stated that DCPS "failed to convene an
IEP team to consider this request [to place and fund the student at McLean School] or
to issue an alternate placement for the 2005-06 school year."  *AR, p. 11.*

18. On August 10, 2005, the parties participated in a resolution session that was deemed
unsuccessful.  *AR, p. 19.*

19. The due process hearing was scheduled for October 3, 2005, but rescheduled for
October 7, 2005 at Plaintiffs' request.  *AR, pp. 34 - 36.*

20. The parties agreed in lieu of a hearing to have the case decided on cross motions for
summary decision.  These motions were submitted on October 24, 2005.  *AR, p. 174.*
Plaintiffs filed a reply on October 28, 2005.  *AR, p. 2.*

21. On November 14, 2005, Hearing Officer Seymour DuBow determined that there was
no denial of FAPE.  Plaintiffs request for relief was denied, and the case was
dismissed with prejudice.  *AR, p. 7.*

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District
 of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Chief, Equity Section 2

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6651

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                 :

**MELISSA ROARK, et al.,**        :
                                   :

        **Plaintiffs**          :

                                   :
         **v.**                :   **Civ. Action No. 05-2383 (JDB)**
                                   :

**DISTRICT OF COLUMBIA, et al.,**  :

                                   :
        **Defendants.**      :
_____:

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS
MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION AND BACKGROUND**

The student is a 15 year old girl eligible to receive special education services pursuant to the individuals with disabilities education act ("IDEA"). _Complaint, para. 3 and 6._ From 2001 through 2005, she attended the Lab School of Washington ("Lab School") funded by the District of Columbia Public Schools ("DCPS"). _Administrative Record ("AR") filed herein April 10, 2006, p. 186._ A multidisciplinary team ("MDT") met each year to reevaluate the student's individualized education plan ("IEP") and made changes to the IEP as warranted.

The student's May 20, 2003 IEP, developed for the 2003-2004 school year, required the student to receive 30.5 hours of specialized instruction per week, weekly individual and group sessions with a speech language therapist, weekly individual and group sessions with a clinical psychologist, and weekly individual and group sessions with an occupational therapist. _AR, p. 142._

The student's May 26, 2004 IEP, developed for the 2004-2005 school year, required the student to receive 32 hours of specialized instruction per week, weekly individual speech and language therapy, weekly individual occupational therapy, and weekly individual and group sessions with a clinical psychologist. *AR, p. 110.*

The student's March 10, 2005 IEP, developed for the 2005-2006 school year, required the student to receive 33.5 hours of specialized instruction per week, weekly individual speech and language therapy, and weekly individual sessions with a clinical psychologist. *AR, p. 82.* Similar to the 2003 and 2004 IEPs, the 2005 IEP contained numerous goals and objectives for the student to achieve in the areas of language arts, math, social behavior, speech and language, and psychological. *AR, pp. 93 – 99.*

The student thrived at the Lab School, and was praised by all of her teachers in her 2005 final report. She received all As and Bs on her final report card for the 2004-2005 school year, earning a 3.8 grade point average. *AR, p. 59.*

On June 16, 2005, Plaintiffs faxed a letter to Sharon Woodson, Placement Liaison from the Office of Special Education, DCPS, informing her that the parents had unilaterally removed the student from the Lab School and placed her at the McLean School for the upcoming 2005-2006 school year. The letter did not contain an allegation of a denial of a free appropriate public education ("FAPE"), did not contain an allegation that the student's IEP was inappropriate, and did not contain an allegation that the Lab School was unable to implement the student's IEP. The letter simply stated that the parents placed the student at McLean, and they expected DCPS to foot the bill. *AR, p. 48.*

On August 2, 2005, Plaintiffs submitted a request for an administrative due process hearing alleging a procedural and substantive violation of IDEA. Plaintiffs stated that DCPS

"failed to convene an IEP team to consider this request [to place and fund the student at McLean School] or to issue an alternate placement for the 2005-06 school year." *AR, p. 11.* A hearing was scheduled for October 7, 2005. *AR, pp. 34 – 36.*

In lieu of a hearing, the parties agreed to submit briefs to the hearing officer, and requested that a decision be made on the briefs and other documents provided. Plaintiffs' brief contained two arguments:  (1) since DCPS did not disclose information and identify witnesses prior to the hearing, they are unable to present any evidence or testimony at the hearing and are unable to meet their burden of proof; and (2) Plaintiffs' placement of the student at McLean was "proper" because McLean provides an educational benefit. *AR, pp. 175 – 181.* Although Plaintiffs assert that DCPS denied the student FAPE because it "failed to comply with all of the IDEA's procedures and…failed to offer [the student] a timely school placement (*AR, p. 177-178),*" Plaintiffs do not state how the alleged failure to follow the procedures resulted in a denial of FAPE.

Defendants' brief argued that they were not obligated to change the student's educational placement because there was no allegation of a denial of FAPE, and there was no educational basis for the change, other than parental preference. *AR, pp. 186 – 187.*

On November 14, 2005, Hearing Officer Seymour DuBow determined that there was no denial of FAPE. Plaintiffs request for relief was denied, and the case was dismissed with prejudice. *AR, p. 7.*

This action is an appeal from that Hearing Officer's Determination ("HOD"). Plaintiffs' Complaint alleges a denial of FAPE because the student's IEP and educational placement are inappropriate. *Complaint, p. 6.* Plaintiffs seek an Order that Defendants place and fund the student at the McLean School for the 2005-2006 school year.

## ARGUMENT

**I.    The Standards of Review Applicable in This Case**

### A.    The requirements for summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C.Cir. 1994).  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  See id.; see also Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C.Cir. 1987).

In cases such as this, the Individuals with Disabilities Education Act, 20 U.S.C. §1400 et seq. ("IDEA"), dictates that "the court shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When (as here) neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).

**B.  The criteria for review of administrative decisions under IDEA**

IDEA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them."  Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ., 2001 U.S.Dist.LEXIS 6994, *12 (N.D.Ill. March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect.  Angevine v. Smith, 292 U.S.App.D.C. 346, 959 F.2d 292, 295 (1992); Kerkam v. McKenzie, 274 U.S.App.D.C. 139, 862 F.2d 884, 887 (1988); Lyons v. Smith, 829 F.Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  Lyons v. Smith, supra, 829 F.Supp. at 418. As recently expressed in S.H. v. State-Operated School Dist. of the City of Newark, 336 F.3d 260, 269-271 (3d Cir. 2003), a district court reviewing an HOD is "required to defer to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record".  This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. Rowley, supra, 458 U.S. at 207-08.

Accordingly, before this Court may reverse the hearing officer's decision at issue, the Plaintiffs must show by a "preponderance of the evidence," giving the hearing officer's finding "due weight," that the hearing officer was wrong.

## II.  The Hearing Officer's Determination is fully supported by the Administrative Record and should be upheld.

The principle issue raised by Plaintiffs in the request for a due process hearing, and subsequent brief submitted to the Hearing Officer is whether DCPS is obligated to place and fund the student at McLean School for the 2005-2006 school year because they denied the student FAPE. Defendants submit that the Hearing Officer's Determination ("HOD"), that there was no denial of FAPE, was legally correct, and should be summarily affirmed.

### A.  Defendants' failure to respond to Plaintiffs' June 16, 2005 letter is not tantamount to a denial of FAPE because the letter did not meet the statutory notice requirements; thus Plaintiffs are not entitled to tuition reimbursement.

20 U.S.C.A. §1412 (a)(10)(C)(iii) provides that a parents' request for tuition reimbursement for private school placement may be reduced or denied if:

> at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, **including stating their concerns** and their intent to enroll their child in a private school at public expense.  (emphasis added)

See also 34 C.F.R. §300.403 (d)(1)(i).

The student's most recent IEP was developed on March 10, 2005.  At no time during that MDT meeting did the parents express displeasure with the IEP or with the student's continued placement at the Lab School.  Indeed, DCPS did not become aware of Plaintiffs' dissatisfaction with the Lab School until they received Plaintiffs' June 16, 2005 letter which states the "parents have determined that she would be more appropriately placed at the McLean School, and have secured her placement there." *AR, p. 48.*

The letter was not received until **three months** after the most recent IEP meeting. More important, the letter does not **state the concerns** they had with placement at the Lab School. The letter does not state why Plaintiffs believed the Lab School was an inappropriate placement and could not implement the IEP.

In <u>Lunn v. Weast</u>, 2006 WL 1554895, *7 (Slip. Op. May 31, 2006, D.Md.), the United States District Court of Maryland found the plaintiff's notice improper because she waited a month after the IEP meeting before expressing dissatisfaction with the proposed placement, and informing the agency of her intent to send the child to a private school. In contrast <u>See</u> <u>Lamoine School Committee v. Ms. Z. ex rel. N.S.</u>, 353 F.Supp.2d 18 (D.Me., 2005) (parental notice sufficient because agency was informed <u>at the placement meeting</u> that parent was seeking placement elsewhere).

In the instant case, Plaintiffs did not inform DCPS of their intent to remove the student from the Lab School until three months after the IEP meeting, nor did they expressed any concerns they had about the Lab School's inability to implement the IEP—steps necessary to be awarded tuition reimbursement pursuant to IDEA. Furthermore, since Plaintiffs' letter did not include these two elements, Defendants were under no duty to respond. Accordingly, Plaintiffs' request for tuition reimbursement must be denied on that basis alone.

**B. <u>Even if Defendants should have responded to the June 16, 2005 letter, there is still no denial of FAPE because the student was not harmed by this procedural error.</u>**

20 U.S.C. §1415(f)(3)(E)(ii) provides that:

in matters alleging a procedural violation, a hearing officer may find that a child did not receive FAPE **only** if the procedural inadequacies:
   (I)        impeded the child's right to a free appropriate public education;
   (II)       significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or

(III)        caused a deprivation of educational benefits.

As evidenced by 20 U.S.C. §1415 (f)(3)(E)(ii), a procedural violation of IDEA, even if caused by the school, provides no basis for relief unless it affects the child's substantive right to FAPE.  See Schoenbach v. District of Columbia, 309 F.Supp.2d 71, 78 (D.D.C. 2004) ("Claims of procedural violations of IDEA do not, in themselves, inexorably lead a court to find a child was denied FAPE.") (citing Adam J. v. Keller Indep. Sch. District, 328 F.3d 804, 811-812 (5th Cir. 2003) ("[C]ircuits that have addressed this question head on have consistently held that procedural defects alone do not constitute a violation of the right to a FAPE unless they result in a loss of an educational opportunity. . . .") (internal quotations omitted)); Simmons v. DC, 355 F.Supp.2d 12 at 18 (D.D.C. 2004) (citing Schoenbach, 309 F.Supp. 2d at 78); A.I. v, District of Columbia, 402 F.Supp.2d 152, 164 (D.D.C. 2005) (citing Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 892 (9th Cir. 2001) ("Not every procedural violation, however, is sufficient to support a finding that the child in question was denied a FAPE.")).  Courts have consistently held that "[t]echnical deviations, for example, 'will not render an IEP invalid.' "  Amanda J., 267 F.3d at 892 (citing Burilovich v. Bd. of Educ., 208 F.3d 560, 566 (6th Cir. 2000), cert. denied, 531 U.S. 957 (2000).

Plaintiffs contend that DCPS' failure to respond to their request for placement and funding for the student at McLean School resulted in a denial of FAPE.  Complaint, p. 4. Assuming, arguendo, that the June 16, 2005 letter met the statutory notice requirements of 20 U.S.C. §1412 (a)(10)(C)(iii), infra, DCPS acknowledges that a response would be required under 20 U.S.C. §1415 (b)(2)(B)(3), which requires written notice to parents whenever the local educational agency proposes to initiate or change, or refuses to initiate or change the identification, evaluation, or educational placement of the child, or the provision of a free

appropriate public education to the child.  See also 34 C.F.R. § 300.503 (a)(1)(ii).

Despite whatever procedural error this would amount to on the part of DCPS, however, the student was not substantively harmed because of this error.  Thus, there was no denial of FAPE.

An IEP for the 2005-2006 school year—very similar to those of past years, which met Plaintiffs' approval—was developed for the student at the Lab School.  DCPS agreed to continue to place and fund the student at Lab School for the 2005-2006 school year, pursuant to this IEP.  Furthermore, as previously discussed, the student thrived at the Lab School and was praised by all of her teachers in her final report.  *AR, p. 59*.  Had Plaintiffs allowed the student to continue to attend the Lab School, the student would have continued to receive FAPE.

Plaintiffs have not asserted that the student was not receiving appropriate services at the Lab School as required by her IEP.  Rather, Plaintiffs suggest that the McLean School would be a more appropriate placement.  Merely alleging that the placement is inadequate is not sufficient to challenge the FAPE provided by DCPS.  See, e.g., Shaw v. District of Columbia, 238 F.Supp.2d 127, 139 (D.D.C., 2002) (student received FAPE under IDEA where IEP and placement reasonably calculated to enable student to receive educational benefits).  Here, the June 16, 2005 letter does not even allege that the Lab School placement in inadequate.

Most notably, Plaintiffs do not allege that the Lab School is **not** appropriate; they merely indicate that the McLean School would be **more** appropriate.  Although the student's parents may wish that the student attend another private school at the District's expense, the IDEA only guarantees a free appropriate education, it does not "provide that this education will be designed according to the parents' desires."  Shaw, 238 F.Supp.2d at 127.

DCPS' failure to respond to the June 16, 2005 letter did not substantially affect or impede the student's ability to receive FAPE.  Moreover, Plaintiffs have not alleged a specific harm because of this failure to respond to the letter, which is necessary to sustain their claim.

The failure of DCPS to respond to the June 16, 2005 letter did not deprive the student of educational benefits.  The ultimate goal of an IDEA proceeding is to provide the child with an appropriate education, and if the school system complies, there is no violation of the IDEA. LeSesne v. District of Columbia, 2005 WL 3276205, *8 (Slip. Op. July 25, 2005, D.D.C.); Shaw v. District of Columbia, 238 F.Supp. 2d 127, 136 (D.D.C. 2002) ("If a disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA, the school district has fulfilled its statutory obligations." (quoting MM v. Sch. Dist. of Greenville County, 303 F.3d 523, 534 (4th Cir. 2002))).  DCPS fulfilled its statutory obligations by providing an IEP for 2005-2006, which placed and funded the student at the Lab School.  DCPS provided the student with an appropriate education under the IDEA, even if Plaintiffs chose not to accept.

This alleged procedural error, failure to respond to Plaintiffs' June 16, 2005 letter, did not impede the student's right to a FAPE or cause a deprivation of educational benefits. Accordingly, the student was not denied FAPE based on this procedural error alone.  Therefore, Plaintiffs' request for tuition reimbursement must be denied.

## C.  The adequacy of the HOD is based upon the character of the evidence presented, not the source.

Prior to the date of the hearing, and pursuant to 20 U.S.C. §1415(f)(2)(A), Plaintiffs submitted a 5-day disclosure notice, complete with a witness list and much documentary evidence.  DCPS did not provide a 5-day disclosure notice.  Plaintiffs argue that since Defendants did not provide any disclosures, they were barred from presenting evidence at the hearing pursuant to 20 U.S.C. §1415(f)(2)(B).  Plaintiffs further argue that since Defendants are

barred from presenting evidence at the hearing, they cannot meet their burden of proof; and if Defendants cannot meet their burden of proof, Plaintiffs should receive a favorable decision by default, and the hearing officer should have so determined.  However, the rules of evidence and common sense necessitate the failure of this argument.

**First**, the purpose of the 5-day disclosure rule is to give the opposing party notice of the witnesses and documents one intents to present at a due process hearing, so that the opposing party will have an opportunity to counter to that evidence.  The rule is an attempt to eliminate any unfair surprise that may occur if an opposing party is unaware of the other party's evidence.  That rule is inapplicable here because, by agreement of both parties, there was no hearing.

Both parties agreed that in lieu of a hearing, the hearing officer should render a summary decision, based upon briefs submitted by the parties.  Both Plaintiffs and Defendants submitted briefs, and Plaintiffs also submitted a reply to Defendants brief.  Thus, not only were Plaintiffs fully apprised of Defendants' position on the issues, but Plaintiffs also had an opportunity to respond fully to Defendants' brief.

Since Plaintiffs were made aware of Defendants' position via Defendants' brief, and Plaintiffs had an opportunity to respond to Defendants' brief, Plaintiffs suffered no adverse impact by Defendants' failure to submit a 5-day disclosure memo.

**Second,** an administrative due process hearing is conducted in the same manner as a judicial proceeding in D.C. Superior Court or in a United States District Court, and is generally subject to the same rules of evidence applicable in those jurisdictions.  *See Office of Administrative Hearing ("OAH") Rules 2801 and 2820.2.*[1]  A hearing officer may permit discovery (*OAH Rule 2823.3),* take testimony under oath (*OAH Rule 2821)* and receive evidence,

---

[1] Office of Administrative Hearing Rules are found in 1 D.C.M.R. Chapter 28.

including hearsay. OAH Rule 2820.1 provides that "Evidence shall not be excluded on the ground that it is hearsay. To the extent it promotes fairness, equity and substantial justice for all parties, the admissibility of relevant, non-cumulative evidence is favored." The hearing officer must possess the knowledge and ability to conduct hearings in accordance with **appropriate**, **standard legal practice**. *20 U.S.C. §1415(f)(3)(A)(iii)*. (emphasis added) As such, the hearing officer must base his decision upon the entirety of administrative record as presented. A decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education. *20 U.S.C. §1415(f)(3)(E)(ii)*.

In the instant case, the hearing officer was presented with sufficient evidence to determine that the student was not denied FAPE. The fact that this evidence was presented solely by Plaintiffs is of no consequence.

Suppose in a due process hearing where parents are challenging an IEP and subsequent educational placement, the parents do not present any evidence on their behalf. Suppose in this same hearing that the school district presents evidence, but the evidence shows that the IEP and educational placement are inappropriate. Using Plaintiffs' logic, the hearing officer in this hypothetical should rule in favor of the school district, simply because the parents did not present any evidence, **even though the evidence the school district presented proved the parents' case.** Such a conclusion by the hearing officer in the hypothetical would be illogical and legally unfounded.

Similarly, the hearing officer in the instant case should base his decision on the merit of the evidence presented, not upon the party that presented the evidence.

Plaintiffs contend that the hearing officer shifted the burden of proof by requiring Plaintiffs to show that the Lab School was no longer appropriate. *Plaintiffs' Motion for Summary Judgment, p. 13.* This is simply not the case. The hearing officer's decision was based on the evidence submitted, and the evidence showed that the Lab School was able to implement the IEP, which Plaintiffs stated they have no dispute with.

Defendants submit that the hearing officer's findings and conclusions in this case were cogent, reasonable and legally correct. Accordingly, the hearing officer's determination must be upheld.

### D.  Defendants are not obligated to place and fund the student at the McLean School for the 2005-2006 school year.

20 U.S.C. §1412(a)(10)(C)(i) provides that:

> Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.

20 U.S.C.A. §1412(a)(10)(C)(ii) provides that:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment **if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.**

See also 34 C.F.R. § 300.403(c). Thus, in order for the hearing officer to award tuition reimbursement in this case, the hearing officer must determine that DCPS did not provide FAPE to the student.

IDEA was enacted to ensure that all children with disabilities have FAPE available to them. *20 U.S.C. §1400(d)(1)(A)* In order to provide a student with FAPE, the state agency must

conduct an initial evaluation of the student (20 U.S.C. §1414(a)(1)(A)), and develop an

individualized education program ("IEP") if the student is determined to have a disability. *20*

*U.S.C. §1414(c).*

In developing an IEP, the team must review existing evaluations of the student, discuss

the student's performance with current teachers, conduct classroom-based observations, and

consider parental input (20 U.S.C. §1414(c)(1)). Once the student has been determined disabled

and eligible for special education services, and the IEP team has met and developed an IEP for

the student, the remaining issue in providing FAPE to the student is that of placement.

In the instant case, Plaintiffs stated that they "did not dispute the appropriateness of the

IEP, but were concerned solely with the setting at which the IEP [would] be implemented." *AR,*

*p. 193.* Thus, the only issue the hearing officer had to decide in determining whether Defendants

provided the student with FAPE, is whether the Lab School could implement the student's IEP.

In preparation of the due process hearing, Plaintiffs provided the student's IEPs from

2003, 2004 and 2005. The services provided by each IEP are virtually identical, differing only in

the methodology of therapy provided; i.e., whether group and/or individual therapy. The 2003

and 2004 IEPs provided speech and language therapy, occupation therapy and sessions with a

clinical psychologist. The 2005 IEP also provided speech and language therapy and sessions

with a clinical psychologist, but did not provide occupational therapy because the IEP team

determined that the student no longer needed that service. The IEPs differed only slightly in the

number of hours of specialized instruction provided: 30.5 hours in the 2003 IEP, 32 hours in the

2004 IEP, and 33.5 in the 2005 IEP. Each IEP team determined that the Lab School could

implement the IEP. The parents participated in the development of the 2003 and 2004 IEPs, and

signed the documents, acknowledging an agreement in the placement decisions. *AR, pp. 143 and*

*111.* Plaintiffs admitted in the "Reply to DCPS Agency Briefing" submitted to the hearing

officer that they had no dispute with the appropriateness of the IEP, the most recent being the

2005 IEP, developed for the 2005-2006 school year. *AR, p. 193.*

Despite the fact that the 2003 and 2004 IEPs are almost identical, that the 2003 and 2004

IEPs selected the Lab School as an appropriate placement that could implement the IEP, and the

parents **signed off on the 2003 and 2004 IEPs,** Plaintiffs are now asserting that the Lab School

is an inappropriate placement for the student.  This assertion is absurd, and should be dismissed

out of hand.

Parents who unilaterally decide to place their disabled child in private school, without

consent of local school officials, "do so at their own financial risk." Florence County Sch. Dist.

Four v. Carter, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (quoting Burlington, 471

U.S. at 373-- 74 (1985)).

"Parents may receive tuition reimbursement if a court finds "both that the public

placement violated IDEA and the private school placement was proper under the Act." *Id.* at 15.

"The first factor is a threshold condition, for if the public school placement would have been

appropriate, the analysis ends, and a disabled child's parents are not entitled to reimbursement.

20 U.S.C. § 1412(a)(10)(C)(I) (indicating that IDEA "does not require a local educational agency

to pay for the cost of education, including special education and related services, of a child with

a disability at a private school or facility if that agency made a free appropriate public education

available to the child and the parents elected to place the child in such private school or

facility."); M.C. v. Valentin Bd. of Educ., 226 F.3d 60, 66 (2d Cir.2000) ("Only if a court

determines that a challenged IAP [sic] was inadequate should it proceed to the second

question.")," <u>Razzaghi v. District of Columbia</u>, 2005 WL 3276318, *4 (D.D.C., September 28, 2005).

     In the instant case, Plaintiffs have conceded that the IEP is adequate, and have previously agreed that the Lab School can implement the IEP. The hearing officer correctly concluded that the Lab School could implement the student's IEP, consequently, there was no denial of FAPE. Since there was no denial of FAPE, Plaintiffs are not entitled to tuition reimbursement. Accordingly, Plaintiffs request for tuition reimbursement must be denied.

## **CONCLUSION**

     Plaintiffs' request for tuition reimbursement is based upon three premises: (1) Defendants denied FAPE because they did not respond to Plaintiff's June 16, 2005 letter; (2) Defendants could not meet their burden of proof in the administrative proceeding because they did not provide any disclosures; thus, the Hearing Officer's Determination should have favored Plaintiffs, by default; and (3) Defendants denied FAPE because the Lab School is an inappropriate educational placement.

     Defendants were not obligated to respond to Plaintiffs' June 16, 2005 letter because the letter did not state with specificity any concerns Plaintiffs had with the IEP or the educational placement at the Lab School. Even if Defendants were required to respond to the letter, the failure to respond was a mere technical violation and did not result in a denial of FAPE. In addition, evidence Plaintiffs provided to the hearing officer was sufficient to enable to him to render a decision that there was no denial of FAPE. Finally, the Lab School is an appropriate placement because the student received some educational benefit there. Moreover, Plaintiffs had accepted the Lab School as appropriate placement in previous years. Accordingly, the Hearing

Officer's Determination must be upheld, and Plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District
   of Columbia

GEORGE C. VALENTINE
 Deputy Attorney General
 Civil Litigation Division

/s/ *Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Chief, Equity Section 2

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6651

**June 22, 2006**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| | : | |
| **MELISSA ROARK, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | **Civ. Action No. 05-2383 (JDB)** |
| | : | |
| **DISTRICT OF COLUMBIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

---

## <u>ORDER</u>

Upon consideration of Plaintiffs' Motion for Summary Judgment, the response to that motion by Defendants and the record in this proceeding, it is, this _____ day of

_____, 2006,

**ORDERED** that Plaintiffs' motion is denied; and it is

**FURTHER ORDERED**, That Plaintiffs' complaint herein is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE