IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MELISSA ROARK, *et. al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 05-2383 (JDB) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
AND IN REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION.

Melissa Roark is a fifteen-year-old disabled child, who is entitled, under the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, to receive special

education and related services from defendants, District of Columbia Public Schools ("DCPS" or

"the school system").  Melissa and her parents, Robert Roark and Abigail Arnold, brought this

action in response to the defendants' failure to provide her with the free appropriate public

education ("FAPE") and due process of law to which she is entitled under the IDEA.

Through an administrative appeal, the parents sought the remedy of a non-public

placement at The McLean School ("McLean") for the 2005-06 school year, where Melissa – a

student who was already receiving DCPS funding for a full-time special education placement at

The Lab School of Washington ("Lab School") – could receive all of her special education

services in a general education setting appropriate to meet her needs.  This action is an appeal of

a decision of a Hearing Officer, who unaccountably ignored the overwhelming and one-sided

evidence and the weight of the law, determined that DCPS offered Melissa an appropriate special

education placement, and denied her family their requested relief.

Specifically, this Memorandum responds to the defendants' combined Cross-Motion for

Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment.  The Roark

family respectfully requests that this Court enter summary judgment in their favor, and provide

them with the much-delayed relief to which they are entitled.


II.      ARGUMENT.

        A.      **The Administrative Record Does Not Support the Hearing Officer's
                Determination.**

While both parties recognize that this Court must give "due weight to the findings of the

local and state educational agencies," *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S.

176, 205-06 (1982), it is imperative the Court must also make an independent decision based

upon the preponderance of the evidence.  *Doyle v. Arlington Count Sch. Bd.*, 953 F.2d 100, 105

(4th Cir. 1991).  In this case, however, it is clear that the Hearing Officer misapplied the law to

the facts and that it therefore does not warrant deference.  *See Teague Indep. Sch. Dist. v. Todd*

*L.*, 999 F.2d 127, 131 (5th Cir. 1993).  The Hearing Officer failed to distinguish between the

IDEA's dual objective of ensuring that special education students receive an academic benefit,

and ensuring that this benefit is provided in the least restrictive environment requirement in

which the child is able to succeed.

The administrative determination, which dismissed the parents' appeal on a summary

decision motion (comparable to a judicial summary judgment), ignored several significant

portions of the record, and invented a few facts without evidence.  Where the Hearing Officer felt

that he lacked the facts necessary to decide the case on motion, the law dictates that the case

should have proceeded to an administrative hearing, where the Hearing Officer could have

engaged in fact-finding, rather than simply guessing without support.  In this section, we

enumerate the facts that the Hearing Officer ignored and/or invented.

> **1.    The Hearing Officer Ignored the Significance of the Difference in Restrictiveness Between the Two Learning Environments: the Full-Time Special Education Program at the Lab School and the Full-Time Mainstream Program at McLean.**

Without taking any evidence on an apparently cloudy point, the Hearing Officer made the

erroneous conclusion that Lab School and McLean are both "private full-time special education

programs for students with learning disabilities."  R. 4.  This conclusion is false, and is one that

the Hearing Officer should have convened a hearing to clarify, if necessary: where Lab School is

a full-time special education school in which all students have educational disabilities and IEPs

designed to meet them, McLean is a general education school, that can provide students with

full-time special education in a full-time mainstream setting.  R. 183.[1]

The difference between the two is of utmost importance here, since the IDEA requires

that children with disabilities be educated "to the maximum extent appropriate" with children

without disabilities.  20 U.S.C. § 1412(a)(5); 20 U.S.C. § 1412(a)(2).  This requirement, called

the least restrictive environment, or "LRE," requirement, reveals the IDEA's preference for

mainstreaming.  The law mandates that all disabled students be placed in the LRE in which they

can receive educational benefit, and DCPS failed in this mandate.  The Hearing Officer,

apparently misjudging the facts, gave this fact no consideration.

---

[1]    Absolutely nothing in the record indicates that McLean is a full-time special education placement, as the Hearing Officer somehow concluded.

2.     **The Hearing Officer Ignored the Fact That Lab School Did Not Reserve a Space for Melissa, and Had So Advised DCPS.**

The Hearing Officer's Order accepts as fact that the school system's hypothetical "proposal" could ever become a reality – that Lab School would have a space for Melissa for the 2005-06 school year. However, as Karen Duncan has sworn[2] (Declaration of Karen Duncan, attached to Plaintiffs' Motion for Summary Judgment), the parents notified Lab School and DCPS during the Summer of 2005 that they were requesting a change in placement, and Lab School promptly filled the space that had been Melissa's. Had the Hearing Officer wished to ascertain whether DCPS' "proposal" was a viable one, again, he should have convened a hearing to find these facts, rather than guessing at them.

3.     **The Hearing Officer Mischaracterized the Parents' June 16, 2005 Letter.**

The Hearing Officer indicates that the Roarks, by their letter dated June 16, 2005, were acting in haste, by advising that they had already removed Melissa from Lab School, that they had already placed her at McLean, and that they were, in essence, asking DCPS to "take it or leave it." Defendants have similarly described the letter, in their Memo at 8. These misinterpretations ignore the actual text of the letter, which reads: "Melissa's parents have determined that she would be more appropriately placed at the McLean School, and have secured her placement there. By this notice, we are requesting that DCPS place and fund Melissa at McLean for the upcoming school year." R. 48. Requesting a change in placement is not the

---

[2]     Defendants do not object to this Court's consideration of Ms. Duncan's Declaration. However, even were there an objection, this Court would be perfectly justified in considering this Declaration, as it addresses facts that were raised by the Hearing Officer, and which he then ruled on and became dispositive.

same as requiring one, and securing a space in a school is not the same as making a unilateral and

immutable commitment.  With the entire summer left to review the Roarks' June request, to

convene any necessary meetings, to speak to any necessary contacts at Lab or McLean, or,

indeed, to the Roarks themselves, DCPS simply did nothing.  The administrative decision

rewarded DCPS for its inaction – inaction that flies in the face of the law – and this Court should

overturn that decision.

      **4.**      **The Hearing Officer Ignored That DCPS Never Issued a Notice of Placement for The 2005-06 School Year, Thereby Denying Melissa a FAPE.**

The defendants argue that DCPS' failure to respond to the Roarks' June 16, 2005 letter

does not lead to a denial of FAPE because the letter did not meet the statutory notice

requirements, and that, therefore, the Roarks are not entitled to tuition reimbursement.   In

support of this argument, defendants first cite to 20 U.S.C.A. § 1412(a)(10)(C)(iii)[3] and claim

that the plaintiffs failed to state at their most recent IEP meeting that they intended to change

Melissa's placement prior to removing her from the Lab School.  It is important to recognize,

however, that DCPS *chose not to attend* this most recent IEP meeting, which convened on March

10, 2005.  It is therefore disconcerting that the school system would now attempt to penalize the

parents for failing to sufficiently convey their intentions at that meeting when DCPS chose not to

---

[3]     20 U.S.C.A. § (a)(10)(C)(iii) provides that a parent's request for tuition reimbursement
for private school placement "**may be reduced or denied**" if:
> at the most recent IEP meeting that the parents attended prior to removal of the
> child from the public school, the parents did not inform the IEP Team that they
> were rejecting the placement proposed by the public agency to provide a free
> appropriate public education to their child, including stating their concerns and
> their intent to enroll their child in a private school at public expense.

have a representative present.[4]  Further, had DCPS acted in response to the parents' request , and

convened a meeting to discuss Melissa's need for a change to a less restrictive environment,

there would be no room for doubt as to the parents' wishes.  Instead, DCPS did nothing.

The Hearing Officer appeared to ignore the statutory requirement that the school system

must give notice of its rejection of the parents' request.  Specifically, the language states:

> The notice required by subsection (b)(3) of this section **shall** include–
> (A)    a description of the action proposed or refused by the agency;
> (B)    an explanation of why the agency proposes or refuses to take the
>        action . . . .

20 U.S.C. § 1415(c)(1) (emphasis added).  Hence, while the statute gives this Court discretion in

considering whether the Roarks provided DCPS with proper notice of their intent to switch

schools, it grants no comparable flexibility to consider whether the school system properly

notified the parents of its refusal to grant their request for a change of placement.  DCPS was

required to give this notice, and failed to do so.[5]  Defendants cannot now be permitted to fault the

parents, in the face of their own inaction.

---

[4]     There is also no evidence whatsoever that the parents waited even a single day to advise
DCPS of their intentions.

[5]     Defendants cite the recent Maryland case of *Lunn v. Weast*, 2006 WL 1554895, 7 (Slip.
Op. May 31, 2006, D. Md.) as justification for denying the Roarks reimbursement for Melissa's
placement at McLean.  However, the instant case is so dissimilar to *Lunn* that we question how it
could apply.  In *Lunn*, the parent enrolled the child in private school without ever notifying the
school system of her intent to do so; here, Melissa's parents provided DCPS with notice more
than two months prior to enrolling her at McLean.  The Roarks letter of June 16, 2005, explicitly
advised DCPS that Melissa required a change in placement and that Mclean could meet her
needs.  DCPS' failure to respond to this letter, in and of itself, caused the procedural violation.  It
is both incorrect and inequitable for defendants now to attempt to pass the blame to some
perceived infraction on the part of the parents.

Furthermore, even if the parents did not express any placement concerns at that meeting, the plain language of the cited subsection certainly does not mandate that the Hearing Officer or this Court deny them reimbursement.  Rather, it provides that under such circumstances the cost of reimbursement "*may be* denied" – not "*must be* denied."  This language affords the Court (and the Hearing Officer below) the discretion to consider the equitable impact of either granting or denying the cost of Melissa's placement at McLean.

Such consideration must include the truth that it would be unreasonable for this Court to punish the parents and Melissa for not communicating their thoughts to DCPS at a forum in which DCPS showed no interest in taking part.  The Court, in its discretion, should also recognize that to penalize the parents would give the school system the incentive to avoid these programming and placement discussions for all funded students,[6] thus affording parents no avenues for ever changing their child's placement.  Finally, we ask this Court to question *why* the school system felt that it should not or could not remove Melissa from one nonpublic placement to another bearing a similar location and cost?  Defendants never offered either the Hearing Officer nor this Court any explanation, and we still are without a real answer to this question.

---

[6]    The law dictates that DCPS, as the funding agency, has a necessary and valued voice in the annual educational planning for each of its students.  For each, DCPS must monitor each student's program and progress, and must issue a new proposal for the provision of special education services at least annually, or more frequently, should the student so require.  20 U.S.C. § 1414(d)(4)(A); 34 C.F.R. § 300.343(c); 5 D.C.M.R. § 3002.3(e) (requiring DCPS to "ensure that the IEP team reviews and revises, as appropriate, but no less than annually, the IEP of each child with a disability.").  DCPS must *continuously* monitor those students it supports in non-public placements, to ensure that they are receiving a FAPE, delivered through an IEP.
    DCPS has the same duty to monitor the progress and needs of the students it funds in non-public placements, as it does its public school students, to ensure that they receive the same FAPE.  *See* 34 C.F.R. § 300.401; 5 D.C.M.R. § 3002.1(d).  The law requires DCPS to "Monitor compliance through procedures such as written reports, on-site visits, and parent questionnaires . . . ."  34 C.F.R. § 300.402(a) ; *see also*, 20 U.S.C. § 1412(a)(10)(B).

*See, e.g.*, *Board of Educ. of Anne Arundel County v. Steffey*, No. 05-253, 2006 WL 174035, slip

op. at *2 (D. Md. Jan. 13, 2006) (holding, "It is difficult to comprehend why [the school system]

would refuse to pay for [one non-public placement] when it would have paid a comparable

amount that same year had the student attended [another non-public placement that the school

system had proposed].").  We maintain that a weighing of these considerations must result in a

decision not to reduce or deny the school system's obligation to fund Melissa's placement at

McLean.

The procedural obligation to formally notify parents of an agreement to or rejection of

their requests, like all of the IDEA's procedural mechanisms, is one that carries much weight.

After all, so critical are the IDEA's procedural safeguards that the Supreme Court has held that

the IDEA right to a FAPE is equally comprised of Due Process of law and a substantively

adequate educational proposal, establishing a two-pronged FAPE consideration: "First, has the

[educational agency] complied with the procedures set forth in the Act, and second, is the

individualized education program developed through the Act's procedures reasonably calculated

to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206-07.  *See also*,

*Board of Educ. of Cabell County v. Dienelt*, 843 F.2d 813, 815 (4th Cir. 1988) (holding that

"failures to meet the Act's procedural requirements are adequate grounds by themselves for

holding that a school board has failed to provide [the student] with a FAPE.") (quoting *Hall v.*

*Vance*, 774 F.2d 629, 635 (4th Cir. 1985)); *Hudson v. Wilson*, 828 F.2d 1059, 1063 (4th Cir. 1987)

(holding that "procedural noncompliance can itself support a finding that a child has not been

provided with a FAPE").  Recently, this Court in *Massey v. District of Columbia*, summarized

the import of the IDEA's procedural framework:

It is technical compliance with the law, however, that gives parents faith that their concerns will be addressed in accordance with Congress' intent. Many of the procedural safeguards in the IDEA are extremely technical, spelling out particular deadlines and required content. This kind of detail embodies the purpose of a statute prescribing administrative – *i.e.*, procedural – remedies. *See Blackman v. District of Columbia*, 277 F. Supp.2d 71, 78 (D.D.C. 2003) (Friedman, J.) (noting that "the procedural due process protections included by Congress in the IDEA are of critical importance to effectuating the goals of the statute") (citing [*Rowley*]). Does DCPS mean to imply that it is permitted to violate the IDEA as long as the ways in which it does so are minor?  This Court has not been directed to any evidence that Congress intended an exemption for "close enough."

*Massey v. District of Columbia*, 400 F. Supp.2d 66, 73 (2005).  The Hearing Officer's distortion

of the procedural requirements of the Act is, at best, a half-baked effort at Due Process.

> **5.     Upon Rejecting a Change from One Nonpublic Placement to Another, the Parents Were Never Bound by Any Formal Notice Provisions of the IDEA.**

The notice requirements upon which the Hearing Officer rejected the parents' claim – and

upon which the defendants urge this Court to reject it – plainly do not apply to the Roark family.

That is, these parents had no duty whatsoever to notify DCPS of anything.  The federal notice

provision is founded on the contingency that notice to the school system under 20 U.S.C. §

1412(a)(10)(C)(iii) is to be given "*prior to the removal of the child from the public school*"

(emphasis added).  The purpose of the notice provisions is clear: to ensure that the local school

systems have an informed opportunity to address parental concerns before a child is removed

from a public placement to a nonpublic placement.  None of these facts pertain to Melissa's

particular scenario.  She was not in public school – either before or after the 2005-06 IEP

meeting.  Her parents were therefore not removing her from public school.  DCPS was not

seeking more information or requiring a "last chance" to identify a public placement for her.  In

fact, DCPS had already committed itself to funding Melissa's private placement. Thus, the notice provisions could have no application to this factual situation.

The Hearing Officer never even considered whether the IDEA's notice provisions applied to this family. This refusal proved fatal to the parents' appeal, as he faulted the parents' failure to comply with these provisions, without recognizing that the very facts of this case – a move from a *nonpublic* placement to another nonpublic placement – render these provisions inapplicable, on their face.

> **6.    The Hearing Officer Ignored the Substantial Harm to Melissa and Her Family, Caused By the School System's Procedural Neglect.**

In addition to the substantive justifications for rewarding reimbursement for Melissa's tuition for the 2005-06 school year, the administrative determination failed to address DCPS' procedural negligence, which inevitably forced the parents to pay for McLean after Melissa lost her spot at the Lab School. Defendants admit that this Court can find that a child did not receive a FAPE due to procedural inadequacies, so long as the student is substantially harmed because of this error. The facts of the instant case make patent that defendants' procedural violation resulted in an IEP which did not place Melissa in the LRE, as required by the IDEA. 20 U.S.C. § 1412(a)(5)(A).[7]   It follows that, had Melissa continued to attend the Lab School, she would not have received a FAPE.

---

[7]    This Section, entitled "Least Restrictive Environment," requires:
To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with supplementary aids and services cannot be achieved satisfactorily.

Defendants, attempting to convince this Court of a lack of harm to Melissa, make much of the fact that she achieved high scholastic marks while at the Lab School. However, such achievement does not equate to an appropriate education; indeed, it lends further support to the parents' contention that Melissa's placement in the full-time special education setting at Lab School was more support than she needed, and that a continued placement there could no longer fulfill the LRE requirement of the Act.

Instead, Melissa was ready for a greater academic challenge, possible in a mainstream environment, while still requiring the support of a full-time program. The evidence before the Hearing Officer demonstrated that in order for Melissa both to succeed in the core academics and to thrive emotionally, it is imperative that her 2005-06 IEP guarantees both social and psychological development.[8] Once Melissa had achieved what she could in a full-time special education setting, in which she spent all of her school hours with disabled peers, in order to continue to meet its obligation of providing her a FAPE – an education that would capitalize on her strengths while still supporting her weaknesses – DCPS should have considered whether Melissa was ready for placement in a school that could allow her the mainstreaming opportunities to interact socially with her non-disabled peers. DCPS failed to take any steps to meet this obligation.

---

[8]     Melissa's emotional growth at the Lab School did not parallel her academic achievement. *See* R. 91-92 (identifying Melissa's weaknesses in social behavioral and psychological services as affecting her ability "to engage in the learning process by not maintaining attention in the classroom, organizing materials and information, using effective study skills, & developing relationships." The report further states that, "Melissa still struggles with anxiety and the tendency to use ineffective coping strategies which then makes it harder for her to effectively function in the general educational curriculum.").

In sum, defendants' "proposed" placement at Lab School – which DCPS never actually proposed – did not mainstream Melissa to the extent mandated by the IDEA.   Therefore, because DCPS neglected to respond to the parents' letter requesting a change of placement, in order to ensure that Melissa would benefit from the 2005-06 school year curriculum, the parents were left with no choice but to enroll her at McLean.

**B.      Defendants Must Be Obligated to Place and Fund Melissa at the McLean School for the 2005-06 School Year.**

In order for this Court to award tuition reimbursement to the parents, it must determine that DCPS never offered Melissa a FAPE.  Such a determination is fairly simple, in light of defendants' failure to issue a Notice of Placement for the 2005-06 school year.  The parents certainly concede that the issue is not the adequacy or appropriateness of the IEP; rather, the question has always been whether it could have been implemented in the less restrictive environment that the parents identified – and of which they *formally requested school system consideration*.  Just because DCPS provided her with a sufficient IEP for the 2003-04 and 2004-05  school years does not mean that the level of service, implemented in the same full-time restricted placement, could have been appropriate for the 2005-06 school year.  The IDEA requirement of annual IEP meetings is, without question, intended to respond to the changing needs of the students.  Melissa's improved academic achievement at the Lab School was, in fact, indicative of her developing skills, and her potential to benefit from a less restrictive educational setting.

 While parents who unilaterally decide to place their disabled child in private school, without consent of local school officials "do so at their own financial risk," *Florence County Sch.*

*Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *Burlington*, 471 U.S. at 373-74 (1985)), the

IDEA has always entitled parents to receive tuition reimbursement if a court finds "both that the

public placement violated IDEA and the private school placement was proper under the Act." *Id.*

at 15.  In this case, the parents were forced to take such a risk when DCPS failed to respond to

their letter requesting a change in placement.  When defendants' procedural negligence delayed

the parents from learning of DCPS' refusal to change Melissa's placement for the 2005-06

school year, Melissa had already lost her space at the Lab School, leaving the parents no other

viable option but to keep her at McLean.

### III.    CONCLUSION.

The Roark family followed all of the correct procedures for requesting a change of

placement for the 2005-06 school year: they attended an IEP meeting at their daughter's then-

current school (to which DCPS was invited, but failed to attend) and voiced their concerns about

the continued appropriateness of a full-time special education setting, they began searching for an

alternative, and they sent a follow-up letter to DCPS, requesting consideration of their identified

placement.  While the Act states that reimbursement *may* not be granted should the parents not

offer sufficient notice during the most recent IEP meeting, in the present circumstance, where

DCPS did not even attend the most recent IEP meeting, it is only equitable for this Court to

recognize that the Roarks did notify the school system via their letter of June 16, 2005, and

therefore should not be denied reimbursement.

In contrast, the school system does have an affirmative duty to respond to all action

requests made by the parents, and DCPS neglected to do so.  In the face of the school system's

negligence, the Roarks had no choice but to proceed with enrolling Melissa at McLean, and at the same time, to forfeit her 2005-06 space at the Lab School.  DCPS offered the Hearing Officer only the toothless explanation that Melissa could have returned to Lab School – to a school that, at the time of this weak protest, had no longer space for her.

The administrative determination not only neglected to address DCPS' procedural negligence, but failed to consider that were Melissa to return to Lab School for the 2005-06 school year, she would not be educated in the least restrictive environment, as the IDEA requires.

Because there are no material facts in dispute and because plaintiffs are entitled to judgment as a matter of law, we respectfully request that this Court enter summary judgment against the defendants, that the Hearing Officer's order be reversed, and that the defendants be ordered to reimburse plaintiffs for the expenses incurred in enrolling Melissa at McLean School for the 2005-06 school year, with costs and attorneys' fees.

Respectfully submitted,

/s/ (filed electronically)
Michael J. Eig    #912733

/s/ (filed electronically)
Haylie M. Iseman        #471891

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Melissa Roark and her parents