# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MELISSA ROARK, a minor,
by her parents and next friends,
Robert Roark and Abigail Arnold, et al.,

        Plaintiffs,

        v.

DISTRICT OF COLUMBIA, et al.,

        Defendants.

Civil Action No.  05-2383 (JDB)

## MEMORANDUM OPINION

Plaintiffs, Melissa Roark and her parents, Robert Roark and Abigail Arnold, bring this action against the District of Columbia and the Superintendent of the District of Columbia Public Schools ("DCPS") under the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. §§ 1400-1482.[1]  They challenge an administrative determination for the 2005-2006 school year denying them tuition reimbursement following placement of Melissa at the McLean School ("McLean") in Potomac, Maryland, instead of the approved program at The Lab School of Washington ("The Lab School") in the District of Columbia, where she had been for several

---

[1] The IDEA was amended on December 3, 2004, and provided that the amendments "shall take effect on July 1, 2005," in most respects.  See Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647, 2803 (2004).  The events underlying plaintiffs' claims took place prior to the effective date of the amendments, with the exception of the administrative proceedings before the hearing officer and Melissa's enrollment at McLean.  The IDEA provisions referenced in this decision concerning a school system's obligations under the Act have not been changed in substance by the amendments.  For these reasons, the citations to the IDEA and the Code of Federal Regulations herein refer to the provisions in effect prior to the July 1, 2005 effective date of the 2004 amendments.  Although the D.C. Municipal Regulations are cited to 2006, the most recent year they were published, none of the regulations cited have changed since 2003.

years.  Now pending before the Court are plaintiffs' and defendants' cross-motions for summary

judgment.  For the reasons explained below, the Court grants defendants' motion for summary

judgment and denies plaintiffs' motion for summary judgment.

## STATUTORY BACKGROUND

Under the IDEA, all states, including the District of Columbia, that receive federal

educational assistance must establish policies and procedures to ensure that "a free appropriate

public education [FAPE][2] is available to all children with disabilities residing in the State . . . ."

20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.1(a); accord D.C. Mun. Regs. tit. 5, § 3000.1 (2006).

Once a child has been evaluated and found to be learning disabled, DCPS is required to create an

individualized education program (IEP) for the child.  20 U.S.C. § 1414(d)(2); 34 C.F.R. §

300.342(a).  Federal law requires that these IEPs be developed by an IEP team, consisting of the

child's parents, regular and special education teachers, a representative of the school district,

persons who can interpret the evaluation results, and the child, if appropriate.  20 U.S.C. §

1414(d)(1)(B); 34 C.F.R. § 300.344(a); D.C. Mun. Regs. tit. 5, § 3003.1 (2006); see Honig v.

Doe, 484 U.S. 305, 311 (1988).  An IEP is a detailed document describing a child's present

educational level, establishing annual educational goals and objectives, prescribing specific

special educational and related services, and explaining the extent to which the child will be

taught in a regular education classroom.[3]  20 U.S.C § 1414(d)(1)(A); 34 C.F.R. § 300.347(a);

---

[2]  The statute defines FAPE as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required . . . ."  20 U.S.C. § 1401(8).

[3]  An IEP also explains whether modifications to district or state assessments need to be
(continued...)

D.C. Mun. Regs. tit. 5, § 3009 (2006); see Honig, 484 U.S. at 311.

In order to implement the IEP, a team that includes the child's parents determines where the child shall be placed. 20 U.S.C. § 1414(f); 34 C.F.R. § 300.552. When selecting an appropriate educational placement, preference is given to the least restrictive environment and the appropriate schools nearest the child's home. Id.; D.C. Mun. Regs. tit. 5, § 3013.1 (2006). If a public school can not provide the services the child needs, DCPS is required to place the child at a private school and pay the child's tuition expenses. Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369 (1985).

If a parent disagrees with the IEP, he or she has a right to a "due process hearing" before an impartial hearing officer, which shall be conducted by a state or local educational agency. 20 U.S.C. § 1415(f)(1). Any party aggrieved by the decision of the hearing officer may bring a civil action challenging the decision. 20 U.S.C. § 1415(i)(2)(A).

## FACTUAL BACKGROUND

Melissa Roark is a sixteen-year-old student at the McLean School, a private day school in Potomac, Maryland. Pls.' Statement of Material Facts ¶ 1, 10; Defs.' Resp. ¶ 1, 10. Her parents unilaterally placed Melissa there at the start of the 2005-2006 school year because they believed McLean was a more appropriate school for Melissa and that DCPS was required to place her there pursuant to the IDEA. Pls.' Statement of Material Facts ¶ 10; Defs.' Resp. ¶ 10; A.R. 48. It is undisputed that Melissa has benefitted from studying at McLean. Pls.' Statement of Material

---

[3](...continued)
made for the child, the date the services will begin and when modifications will be needed, how progress will be measured and how parents will be kept informed. 20 U.S.C § 1414(d)(1)(A); 34 C.F.R. § 300.347(a); D.C. Mun. Regs. tit. 5, § 3009 (2006).

Facts ¶ 10; Defs.' Resp. ¶ 10.

Melissa has educational disabilities that entitle her to receive special education and related services under the IDEA.  Pls.' Statement of Material Facts ¶ 1; Defs.' Resp. ¶ 1.  Prior to enrolling at McLean, Melissa attended The Lab School, a private, special education day school in the District of Columbia for students with learning disabilities.  Pls.' Statement of Material Facts ¶ 3; Defs.' Resp. ¶ 3; A.R. 80.  DCPS placed and funded Melissa at The Lab School for several years in order to implement her annual IEP.  Pls.' Statement of Material Facts ¶ 2; Defs.' Resp. ¶ 2.  Her IEPs for the academic years covering 2003-2004, 2004-2005, and 2005-2006 all reached the same conclusion: "[Melissa's] pervasive learning disabilities impede acquisition of academic skills and the ability to learn and complete assignments in the general education curriculum.  A self-contained, intensive, individualized, remedial special education program will allow academic and social/emotional growth."  A.R. 103, 135, 167.  Melissa's IEPs increased the amount of time she spent in special education classrooms from 30.5 hours a week in 2003-2004 to 33.5 hours a week in 2005-2006.  A.R. 82, 142.  Each year, Melissa's IEPs specifically rejected placing her in a general education classroom and, instead, required Melissa to be placed full-time in special education classrooms.  A.R. 104, 135, 167.  It is undisputed that Melissa thrived at The Lab School.  Defs.' Statement of Material Facts ¶¶ 13-14; Pls.' Resp. ¶¶ 13-14.  There, she earned a 3.8 grade point average for the 2004-2005 school year and received "glowing reports" from all of her teachers.  A.R. 59-69.

Melissa's IEP for the 2005-2006 school year was developed on March 10, 2005 at a meeting attended by members of The Lab School staff and Melissa's parents.  Pls.' Statement of Material Facts ¶ 5; Defs.' Resp. ¶ 5.   This IEP is a 28-page document that describes in detail

Melissa's academic, speech and language, and occupational therapy test scores; outlines Melissa's specific academic and personal goals for the year; and prescribes her curricular requirements and needs. A.R. 82-109. This most recent IEP categorizes Melissa's needs as "high" and states that the IEP team determined that Melissa should be educated "out of the general classroom" by "special educators and related service providers" "between 61% and 100% of service time." A.R. 104. The IEP provides for implementation of its provisions at The Lab School. See A.R. 103 (listing The Lab School as both the attending and the managing school); A.R. 107 (requesting transportation between Melissa's home and The Lab School). Melissa's parents do not dispute the validity and appropriateness of this IEP or the ability of The Lab School to implement it. A.R. 193. There is no evidence in the record to suggest that anyone objected to the IEP or to placement at The Lab School when the IEP was developed on March 10, 2005.

Three month's later, plaintiffs' counsel faxed and mailed the following three-sentence letter to DCPS on June 16, 2005:

> We represent the family of Melissa Roark, currently a DCPS-funded student at The Lab School of Washington. Melissa's parents have determined that she would be more appropriately placed at the McLean School, and have secured her placement there. By this notice, we are requesting that DCPS place and fund Melissa at McLean for the upcoming school year.

A.R. 48.[4]

---

[4] The parents' search for an alternative to The Lab School prior to this letter is not documented in the administrative record. The Court notes that the complaint alleges that during the 2004-2005 school year, Melissa's parents began to question whether Melissa required full-time special education services, which isolated her from the traditional mainstream school environment, and that they consulted with educators and experts to locate an appropriate school where Melissa could receive individualized education and support "in a more mainstream setting." Compl. ¶¶ 10-11. McLean was identified as an appropriate school and the Roarks applied for Melissa's admission there at an undisclosed date. Id. ¶ 11. DCPS was not made aware of these efforts until the June 16, 2005 letter.

DCPS did not reply to plaintiffs' counsel's letter and six weeks after the letter was sent, the Roarks filed a due process administrative complaint pursuant to 20 U.S.C. § 1415(b)(6). A.R. 9-12. The due process complaint alleged that DCPS had denied Melissa a FAPE by failing to respond to counsel's letter, convene an IEP team to consider Melissa's placement, and, ultimately, place Melissa at McLean. A.R. 11. Both parties participated in a resolution session, which was held on August 10, 2005. A.R. 18-21. There, DCPS offered to hold an IEP meeting prior to the start of the 2005-2006 school year during which placement would be discussed; however, the parties could not reach an agreement. A.R. 20. Plaintiffs then filed their pre-hearing disclosure statement documenting the evidence they intended to introduce (primarily Melissa's Lab School records, including IEP documents) and identifying their witnesses. A.R. 41-172. DCPS did not submit a disclosure statement. The parties then agreed to file cross-motions for summary decision without a hearing. A.R. 174-194.

On November 14, 2005, the Hearing Officer denied the Roarks' motion for summary decision and dismissed the case. A.R. 1-7. The Hearing Officer's Determination ("HOD") found that Melissa's IEP was appropriate, that her placement at The Lab School afforded her educational benefits, and that the Roarks had failed to request an IEP team meeting to discuss concerns with the implementation of Melissa's IEP and her placement at The Lab School. A.R. 3, 7. The Roarks filed the current action for judicial review of the HOD on December 13, 2005 pursuant to 20 U.S.C. § 1415(i)(2)(A). The parties' cross-motions for summary judgment, which are now ripe for resolution, followed.

## STANDARD OF REVIEW

### I.    Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## II.   Judicial Review of IDEA Due Process Hearing Determinations

The IDEA permits "any party aggrieved by the findings and decision" rendered during administrative proceedings to "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.512(b)(3). The reviewing court

"shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii); 34 C.F.R. § 300.512(b)(3). In review of a HOD, the burden of proof is with the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong.'" Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).

The Supreme Court has interpreted the "preponderance" standard of review not to be an allowance of unfettered de novo review. Bd. of Educ. Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). Rather, consideration of the record impliedly requires courts to give "due weight" to the administrative proceedings, id., and "[f]actual findings from the administrative proceeding are to be considered prima facie correct," S.H. v. Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003). Therefore, courts may not substitute their own views for those of the hearing officer, see Rowley, 458 U.S. at 206; Shaw v. District of Columbia, 238 F. Supp. 2d 127, 135 (D.D.C. 2002), and a court upsetting a hearing officer's decision "must at least explain its basis for doing so," Kerkam, 862 F.2d at 887. However, "the district court's authority to 'hear additional evidence at the request of a party,' and 'base its decision on the preponderance of the evidence' . . . plainly suggest[s] less deference than is conventional' in administrative proceedings." Reid, 401 F.3d at 521 (quoting Kerkam, 862 F.2d at 887).

When no additional evidence is introduced in a civil suit seeking review of a HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record. 20 U.S.C. § 1415(i)(2)(C); Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997) . Here, the sole extra-record evidence submitted is the three-page declaration of

– 8 –

Karen Duncan, the Academic Director of The Lab School, to further document the procedural history underlying this case.[5]  Thus, the Court bases its review primarily on the administrative record, supplemented by the information in the Duncan declaration.

## ANALYSIS

The Supreme Court has established a two-part test for courts reviewing an administrative decision under the IDEA.  Rowley, 458 U.S. at 206-07; see Shaw, 238 F. Supp. 2d at 134.  First, courts consider whether the State has met the IDEA's procedural requirements.  Rowley, 458 U.S. at 206.  Second, courts review the IEP -- including the child's placement -- to determine if it is "reasonably calculated to enable the child to receive educational benefits."  Id. at 207; see Schoenbach v. District of Columbia, No. 05-1591, 2006 WL 1663426, at *4 n.3 (D.D.C. June 12, 2006) (stating that reviewing the IEP includes evaluating the student's placement).  Plaintiffs contend that Melissa was deprived of a FAPE under both standards, arguing that the hearing officer misallocated the burden of proof, DCPS failed to respond to the parents' request for a change in placement, and DCPS failed to offer Melissa an "appropriate" placement in the least restrictive environment.  The Court will address each of these issues in turn.

---

[5] DCPS suggests that the Court should not consider the Duncan declaration (at least, the reference to the parents' decision to relinquish Melissa's space at The Lab School) because both parties agreed at the administrative level that the complaint would be resolved on cross-motions for summary decision without a hearing based on the record then submitted.  Defs.' Reply Br. at 4; A.R. 174.  But the Court's power to receive additional evidence "entail[s] broad discretion and implicate[s] equitable considerations."  Reid, 401 F.3d at 521-22 (internal quotations and other citations omitted).  In light of the interest in a complete factual record and the absence of any prejudice to DCPS, the Court will allow supplementation of the record with the Duncan declaration.

## I.    Allocation of the Burden of Proof at the Administrative Level

Plaintiffs first allege that the Hearing Officer misallocated the burden of proof at the administrative level.  Pursuant to local regulations implementing the IDEA, DCPS "bear[s] the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student."  D.C. Mun. Regs. tit. 5, § 3030.3 (2006).[6]  Nothing in the record suggests that the hearing officer placed the burden of proof on the Roarks, nor do the plaintiffs cite any part of the record to support their allegation.[7]  See Schoenbach, 2006 WL 1663426 at *4 (failing to cite the record to support the allegation of a misallocated burden of proof weighed against plaintiffs).  Cf. Kroot v. District of Columbia, 800 F. Supp. 976, 982 n.10 (D.D.C. 1992) (holding that the burden was misallocated when the hearing officer erroneously stated "[t]he burden of proof shifts to the parents once DCPS is found to have not met its burden of proof").

Instead, plaintiffs claim that by not introducing any evidence, "it should have been impossible for DCPS to meet its burden."  Pls.' Mot. Summ. J. at 13.  However, it is well-established that a party can rely on any evidence in the record to establish that a fact has been

---

[6] In Schaefer ex rel. Schaefer v. Weast, 546 U.S. 49, 126 S. Ct. 528, 537 (2005), the Supreme Court held that the burden of proof in an IDEA due process hearing is borne by the party seeking relief.  The Supreme Court declined to decide whether a state could reverse the burden of proof and put the burden always on the school district, thus leaving intact local regulations that have done so.  126 S. Ct. at 537.  The relevant District of Columbia regulation places the burden of proof on the school district -- a regulation that defendants do not contest. Therefore, the Court will assume without deciding that the regulation governing the burden of proof is valid.  See Schoenbach, 2006 WL 1663426, at *4 n.3 (concluding that Schaefer does not affect the regulation imposing the burden of proof on DCPS).

[7] The HOD does not state who bore the burden of proof or if it was met.  The hearing officer only acknowledged plaintiffs' claim that DCPS cannot meet its burden of proof because it did not submit any evidence.  A.R. 4.

proven.  See Bahura v. S.E.W. Investors, 754 A.2d 928, 939-40 (D.C. 2000) ("The sufficiency of

the evidence . . . must be determined on the basis of the entire record, and it will not do to

examine only the evidence introduced by [one party]").  Thus, DCPS can rely on evidence

submitted by the Roarks to meet its burden of proof.  On September 29, 2005, plaintiffs filed 129

pages of documentary evidence, primarily Melissa's academic IEP records from The Lab

School.[8]  A.R. 41-172.  Subsequently, the Roarks and DCPS filed cross-motions for summary

decision on October 25 and 27, 2005, respectively.  DCPS's cross-motion for summary decision,

though lacking in citations, clearly relied on Melissa's academic records from The Lab School --

the evidence submitted by the Roarks -- to support its position that the IEP was appropriate and

The Lab School was able to implement it.  See A.R. 186-87 (DCPS brief arguing that "DCPS has

funded the student at The Lab School of Washington for approximately four (4) years," and

arguing that the IEP should not be found inappropriate based solely on a change in "parental

preference").

        In that context, the Hearing Officer assessed the evidence presented by plaintiffs and

simply found it adverse to their position:

> Counsel for the parents' submitted documents clearly show that The Lab School IEP is
> appropriate; that The Lab School can implement the IEP; that the student has received
> educational benefits from The Lab School's program and the student has made
> exceptional progress at The Lab School.

A.R. at 5.  An administrative (or even judicial) determination that evidence is damaging to one

party's case is not a shifting of the burden of proof, but rather an assessment of the evidence.  An

administrative hearing officer, like the trier of fact in judicial proceedings, must weigh and

---

[8] Evidence submitted by plaintiffs included the following: Melissa's Lab School report
card, final report, tutoring report, speech/language progress report, psychotherapy progress
report, SSAT report and three most recent IEPs, and a brochure on McLean.  A.R. 41.

interpret the evidence and ultimately make a finding, even if the finding is adverse to the proffering party. See O'MALLEY, GRENIG, AND LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.01 (5th ed. 2000) ("In determining whether any fact in issue has been proved by a preponderance of the evidence you may . . . consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them."); DISTRICT OF COLUMBIA BAR ASSOCIATION, STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA Instruction No. 2-9 (2004) ("In determining whether any fact has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon that fact, regardless of who produced it. A party is entitled to benefit from all evidence that favors [him] [her] whether [he] [she] produced it or [his] [her] adversary produced it."); Bahura, 754 A.2d at 940 (approving Instruction 2-9). Moreover, in an IDEA case, one would expect the IEP and academic records of a child -- the evidence submitted by plaintiffs -- to be the focal point of the evidence. The fact that plaintiffs, rather than defendants, submitted those records does not support the conclusion that the burden of proof was misallocated. Of course, whether the hearing officer's findings as to the adequacy of the IEP and Lab School placement are reasonable and supported by the record is an issue separate from the allocation of the burden of proof, and will be discussed in more detail below.

## II.    Notice

Plaintiffs argue that DCPS violated their procedural rights by failing to respond to their June 16, 2005 letter, which stated that the Roarks chose to place Melissa at McLean and requested that DCPS fund that placement. Defendants do not dispute the lack of a response from DCPS, arguing instead that it was not required to respond because the parents failed to meet a statutory requirement to "state their concerns" at the IEP meeting or in the letter.

The IDEA requires a school system to provide a written notice to parents when it refuses to change the placement of a child. This requirement appears on the face of section 1415(b)(3), which states:

> Written prior notice to the parents of the child, in accordance with subsection (c)(1) of this section, whenever the local educational agency--
>> (A) proposes to initiate or change; or
>> (B) refuses to initiate or change,
> the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child.

20 U.S.C. § 1415(b)(3); see also 34 C.F.R. § 300.503; D.C. Mun. Regs. tit. 5, § 3024.1 (2006).

DCPS relies on a separate statutory provision addressing reduction and denial of tuition reimbursement in support of its position that the parents' failure to specify their concerns obviated any duty to respond or to pay tuition for the McLean School. This provision states:

> The cost of reimbursement . . . may be reduced or denied -- (I) if -- (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense.

20 U.S.C. § 1412(a)(10)(C)(iii); see also 34 C.F.R. § 300.403(d)(1)(i). Nothing on the face of this provision negates DCPS's duty to respond to the Roarks' request for change in placement, nor has the Court found any case law supporting such a reading. Thus, the Court focuses on DCPS's argument that, despite its failure to respond, the Roarks' failure to state their concerns about The Lab School at the IEP meeting or in their letter weighs in favor of denying tuition reimbursement.

Assuming without deciding that this notice requirement applies to the Roarks,[9] any lack of notice by the parents does not affect DCPS's obligations because DCPS failed to attend the IEP meeting at which the parents should have provided the notice. Where "the school prevents the parents from providing the notice" at the IEP meeting, the parents' failure to provide notice of its concerns has no impact on tuition reimbursement. See 20 U.S.C. § 1412(a)(10)(C)(iv). Here, the Duncan declaration (unrebutted by DCPS) shows that DCPS was invited to attend the IEP meeting and failed to do so. See Pls.' Statement of Material Facts ¶ 5; Defs.' Resp. ¶ 5; Duncan Decl. ¶ 7.

The participation by representatives of The Lab School does not fulfill DCPS's obligation to attend. The IDEA states that a "representative of the local educational agency" must be included on the IEP team. 20 U.S.C. § 1414(d)(1)(B)(iv); accord 34 C.F.R. § 300.344(a)(4); D.C. Mun. Regs. tit. 5, § 3003.1(d) (2006). Because this representative is "presumably an employee of that agency," DCPS cannot delegate its responsibility to be an active participant of the IEP team to a Lab School administrator or anyone else. Reid, 401 F.3d at 526. The school district's representative is the only member of the IEP team who knows the curricular options and the "availability of resources of the local educational agency." 20 U.S.C. § 1414(d)(1)(B)(iv).

_____

[9] The Roarks argue that this parental notice provision does not apply to their removal of Melissa from The Lab School because the plain language refers to notice only "prior to removal of the child from the *public* school," 20 U.S.C. § 1412(a)(10)(C)(iii) (emphasis added). See Pls.' Opp'n Br. at 9-10. However, DCPS contends that this section should be read within the context of the preceding section, addressing "[r]eimbursement for private school placement" more broadly, which authorizes tuition reimbursement when parents remove a child who is placed "under the authority of a public agency," id. § 1412(a)(10)(C)(ii). See Defs.' Reply Br. at 7. DCPS argues that this language makes the notice provision applicable to any parental rejection of placements proposed by the public school system, including rejection of proposed private school placements. Defs.' Reply Br. at 7.

DCPS's failure to comply with IDEA's procedures, however, is not dispositive of whether Melissa was denied a FAPE. "[A]n IDEA claim is viable only if those procedural violations affected the student's *substantive* rights." Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006) (emphasis in original); see also Kingsmore ex rel. Lutz v. District of Columbia, -- F.3d --, No. 05-7156, 2006 WL 2792733, at * 1 (D.C. Cir. Sept. 29, 2006). To succeed on a procedural claim, parents must demonstrate that the school district's procedural violations affected their child's ability to receive the educational benefit that the IDEA requires. Lesesne, 447 F.3d at 834.

Here, the Roarks have not offered any evidence proving that DCPS's procedural error has caused substantive harm by negatively impacting Melissa's education. Instead, the evidence supports the hearing officer's finding that Melissa received educational benefits at The Lab School, where she received high grades, excellent reports from her teachers, and continuously improving test scores. A.R. 59-79, 84-90, 14-121, 147-153. Indeed, the Roarks acknowledge that Melissa received an educational benefit at The Lab School. A.R. 175. The Roarks argue that Melissa was nonetheless harmed because The Lab School did not have a space for Melissa for the 2005-2006 school year. Pls.' Reply Br. at 4; Duncan Decl. ¶ 8. As a threshold matter, this argument is not supported by the Duncan declaration, which states only that the parents "relinquished Melissa's space" for that year, and "the school subsequently filled this space with another student." Duncan Decl. ¶ 8 (emphasis added). The Lab School has not represented anywhere in that declaration that it had no space for Melissa for the school year and thus would have rejected her reenrollment.

But even assuming arguendo that The Lab School had no space, the loss of her space was

at the election of the parents rather than DCPS. Indeed, the record shows that at a "resolution meeting," preceding the due process hearing, DCPS "offered to hold an MDT/IEP meeting prior to the beginning of the 05/06 [school year]," but "the parent [was] seeking funding for McLean." A.R. 20. This, in combination with the June 16, 2005 letter, underscores that DCPS did not cause the loss of Melissa's placement at The Lab School. That had been decided by the parents, who were then left facing the issue of tuition reimbursement. Therefore, DCPS's failure to attend Melissa's IEP team meeting and respond to the Roarks' letter did not harm Melissa's substantiative rights. Although DCPS did not comply with the IDEA notice procedures, its violation is not a sufficient basis to support their claim of relief. See Lesesne, 447 F.3d at 834.

## III.    Least Restrictive Environment

Plaintiffs also claim that DCPS failed to offer Melissa a FAPE because DCPS failed to place her in the least restrictive environment possible. Specifically, the Roarks allege that after succeeding at The Lab School, which educates special education students exclusively, Melissa should now be mainstreamed by placing her at a school like McLean that teaches both regular and special education students.

The IDEA requires school districts to place disabled children in the least restrictive environment possible. 20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.550; D.C. Mun. Regs. tit. 5, § 3011 (2006). Although placement decisions must be made "in conformity" with the least restrictive environment provisions, federal and D.C. regulations require placements to be "based on the child's IEP" and "as close as possible to the child's home." 34 C.F.R. § 300.552; D.C. Mun. Regs. tit. 5, § 3013 (2006). Moreover, in determining the least restrictive environment, consideration is given to the types of services that the child requires. 34 C.F.R. §300.552(d).

Still, "[m]ainstreaming of handicapped children into regular school programs where they might have opportunities to study and to socialize with nonhandicapped children is not only a laudable goal but is also a requirement of the Act." Devries v. Fairfax County Sch. Bd., 882 F.2d 876, 878 (4th Cir. 1989).

However, defendants contend that plaintiffs failed to raise the issue of the least restrictive environment at the administrative level. Defs.' Reply Br. at 3-4. As the defendants correctly state, this Court cannot address an issue that was not first presented to the hearing officer. Shaw, 238 F. Supp. 2d at 140 (citing Cox v. Jenkins, 878 F.2d 414, 420 (D.C. Cir. 1989)); Herbin ex rel. Herbin v. District of Columbia, 362 F. Supp. 2d, 254, 263 n.10 (D.D.C. 2005). Absent evidence that "an attempt was made to raise this issue before the hearing officer" and "absent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the IDEA before seeking judicial review under the Act." Herbin, 362 F. Supp. 2d at 263 n.10 (quoting Shaw, 238 F. Supp. 2d at 140) (other citations omitted). The exhaustion requirement serves several important purposes:

> [I]t prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it prevents the parties from undermining the agency by deliberately flouting the administrative process.

Cox, 878 F.2d at 419. At the administrative level, the Roarks did not raise their allegation that DCPS violated the IDEA's least restrictive environment provisions by failing to place Melissa at McLean -- neither in their June 16, 2005 letter to DCPS, in their due process complaint, nor in the briefs submitted to the hearing officer. See A.R. 9-12; 48; 175-185; 191-194.

Even if the Roarks had made this allegation at the administrative level, moreover, their

least restrictive environment claim would fail because there is no evidence in the record to show

that McLean can implement Melissa's IEP.  In <u>Schoenbach</u>, plaintiffs similarly alleged that

DCPS violated the least restrictive environment requirement and sought tuition reimbursement

after unilaterally placing their child in a private school.  2006 WL 1663426, at *7.  The court

explained that "the key consideration is whether the placement is appropriate under the IDEA,"

not whether it is the least restrictive.  <u>Id.</u> (citing <u>Devries</u>, 882 F.2d at 878) (other citations

omitted).  Plaintiffs are not "entitled to reimbursement for private school just because the private

placement is less restrictive than the public school placement."  <u>Berger v. Medina City Sch. Dist.</u>,

348 F.3d 513, 522 (6th Cir. 2003) (denying tuition reimbursement in part because the private

school did not provide special education services required by the child's IEP); <u>see</u> <u>Schoenbach</u>,

2006 WL 1663426, at *7.

To determine whether the McLean placement was appropriate, one must refer to the IEP.

Melissa's March 2005 IEP requires 33.5 hours per week of full-time special education instruction

"out of general education classroom" and "not with non-handicapped peers," plus related

instruction and services on an individual basis for 1.5 hours per week.  A.R. at 82, 103-04.  There

are no facts in the record establishing that McLean is an adequate placement that can provide the

full-time special education, instructional and individual services required by Melissa's IEP.[10]  In

fact, plaintiffs state that "McLean is <u>not</u> a full-time special education program, hence the

mainstreaming opportunity that it provided the [sic] Melissa."  Pls.' Mot. for Summ. J. at 6

---

[10] The declaration of Elizabeth McConnell, head of the Upper School at McLean School,
states only that she "believes that McLean School can provide [Melissa] with the special
education and related services she requires," and makes the conclusory statement that "Melissa is
receiving significant educational benefit from her program at McLean School" without providing
any details of the program.  A.R. 183.

(emphasis in original); see also id. at 19 ("McLean does not offer a traditional special education program").[11]  Therefore, even if the Roarks had sufficiently pled this issue before the hearing officer, plaintiffs would not be entitled to reimbursement for the tuition expenses they paid to McLean because the administrative record does not establish that McLean can provide the special education services that 's Melissa's IEP requires.  See Schoenbach, 2006 WL 1663426, at *7.

In contrast, the administrative record establishes that The Lab School placement was "appropriate."  Plaintiffs have admitted that Melissa received an "educational benefit" at The Lab School.  A.R. 175.  At the administrative level, the Roarks stated: "DCPS previously placed and funded Melissa at The Lab School of Washington ("Lab"), a full-time special education program where she received educational benefit."  Id. (emphasis added).  They further stated that "[t]he parents do not dispute the appropriateness of the IEP." A.R. 193.  In Rowley, the Supreme Court explained that a school district satisfies the FAPE requirement when it "provid[es] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction."  458 U.S. at 203.  Here, since DCPS's placement at The Lab School afforded Melissa educational benefit and the IEP for the 2005-06 school year was appropriate, the District has satisfied its obligation to offer a FAPE under the IDEA.

Independently of plaintiffs' admissions, the evidence in the record strongly supports that

---

[11] If McLean could provide the services that Melissa's IEP requires, her placement at McLean might still be improper under the Act.  The IDEA requires placements to be "as close as possible to the child's home."  34 C.F.R. § 300.552(b)(3); D.C. Mun. Regs. tit. 5, § 3013.1(f) (2006).  Defendants correctly state that D.C. statutes and regulations permit DCPS to place and fund a student at a school outside the District only if there is no appropriate public, charter or private school program within the District.  D.C. Code § 38-2501(c) (2001); D.C. Mun. Regs. tit. 5, § 3013.6 (2006).

conclusion.  Academic success is an important factor "in determining whether an IEP is reasonably calculated to provide education benefits."  Berger, 348 F.3d at 522 (citations omitted). During the 2004-2005 school year, Melissa received a 3.8 grade point average at The Lab School. A.R. 59.  Her report card further shows that Melissa's grades increased as the year progressed, which suggests that Melissa was learning and that her academic skills were improving at The Lab School.  Id.  The record also includes Melissa's standardized test scores.  Melissa's annual speech and language progress report for 2004, A.R. 71-79, shows a significant improvement over the same report from 2002.  A.R. 115-119.[12]  Additionally, Melissa's scores on the Woodcock-Johnson III Tests of Achievement improved significantly from 2003 (A.R. 147) to 2005 (A.R. 84).

The IDEA's guarantee of a FAPE is that of a "basic floor of opportunity. . . [that] consists of access to specialized instruction and related services which are individually designed to provide education benefit to the handicapped child."  Rowley, 458 U.S. at 201.  There is no requirement for a state to provide services to maximize each child's potential, id. at 198, nor must the FAPE " be designed according to the parent's desires," Shaw, 238 F. Supp. 2d at 139.  See also Kerkam, 862 F.2d at 886 ("[P]roof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act.").  Parents who choose unilaterally to place their disabled child in a private school without the agreement of the school district "do so at their own risk," and are entitled to reimbursement only if a court concludes that the placement approved by the school officials violates the IDEA and that the private school

---

[12] An example of the improvement in Melissa's standardized test scores is her Composite Score on the Test of Language Competence-Expanded Edition (TLC-E), Level 2.  She improved from the 37th percentile in 2002 to 75th percentile in 2004.  A.R. 72, 149.

placement is proper under the IDEA.  <u>Florence County Sch. Dist. v. Carter</u>, 510 U.S. 7, 15 (1993)

(quoting <u>Burlington</u>, 471 U.S. at 373-74).  Here, the administrative record supports only one

conclusion -- that The Lab School program constituted a FAPE, albeit one that did not comport

with the parents' desire for mainstreaming.  But for the Roarks' relinquishing Melissa's space at

The Lab School, Melissa would have continued to receive an FAPE through the implementation

of her IEP at The Lab School.

## **<u>CONCLUSION</u>**

Upon consideration of the administrative record and findings in the 2005 HOD, and for

the reasons stated above, the Court affirms the 2005 HOD finding plaintiffs ineligible for tuition

reimbursement.  Accordingly, the Court will grant defendants' motion for summary judgment

and deny plaintiffs' motion for summary judgment.  A separate order will be issued.


_____/s/_____
JOHN D. BATES
United States District Judge


Date:   October 25, 2006